UNITED STATES of America,
Appellee,

v.

Jeffrey Hale PURVIS, Appellant.

No. 72, Docket 32187.

United States Court of Appeals
Second Circuit.

Argued Sept. 19, 1968.

Decided Nov. 14, 1968.

556

Kenneth W. Greenawalt, New York City (Raymond T. Munsell, New York City, on the brief), for appellant.

Jerome C. Ditore, Asst. U. S. Atty. (Joseph P. Hoey, U. S. Atty., for the Eastern District of New York, on the brief), for appellee.

Before MOORE, FRIENDLY and FEINBERG, Circuit Judges.

FEINBERG, Circuit Judge:

Jeffrey Hale Purvis appeals from a judgment of conviction and a sentence of three years in prison by Judge Matthew T. Abruzzo of the United States District Court for the Eastern District of New York for violating section 12(a) of the Universal Military Training and Service Act,[1] 50 U.S.C. App. § 462(a), by refusing to submit to induction into the armed forces. Appellant's refusal was based upon his claim that the selective service authorities should have exempted him, as a conscientious objector, from all military service rather than from combatant service alone. For reasons set forth below, we reverse the judgment of conviction.

I.

It should be noted at the outset that this is not a case in which a notice to report for induction stimulated an apparently slumbering conviction of conscientious objection to war. Appellant's father was a Quaker who "had strong convictions * * * and dominated the family";[2] in his formative years, appellant attended Quaker services with his family. At age 18 in 1959, after registering with his local draft board, appellant promptly asserted a claim for ex-

---

1. The Universal Military Training and Service Act was superseded effective June 30, 1967, by the Military Selective Service Act of 1967, 50 U.S.C. App. §§ 451–471.

2. Resume of the Inquiry, Re: Jeffrey Hale Purvis, Nov. 17, 1961, at 1 (FBI resume).

emption from military service based on religious training and belief as a conscientious objector.[3] Shortly thereafter, appellant was classified 1–A (available for military service); upon receiving notice thereof, he requested a personal appearance before the local board. Before that occurred, however, the board advised appellant that since he was a college student, he would be classified 2–S (student deferment) after the board received a confirmatory form from his college, and that consideration of his conscientious objector claim could be postponed to a later date. Early in 1960, the board received the proper form from appellant's school, and the following month appellant was classified 2–S. He continued to be so classified until July 1961, when he was again classified 1–A after leaving school for academic reasons.

Appellant again sought a conscientious objector exemption from military service, both before the local board, which denied it, and before the appeal board. The latter body, invoking the special procedure for processing such claims then in existence, sent appellant's file to the Department of Justice. This called for an investigation of appellant by the Federal Bureau of Investigation, a subsequent hearing before a special officer appointed by the Department to whom the officer would report, and a recommendation thereafter by the Department to the appeal board.[4] Accordingly, in the fall of 1961, the FBI conducted an investigation of appellant's character and good faith. According to the resume of the FBI report in the record, the results of the investigation can fairly be described as favorable to appellant; the report revealed that he came from a Quaker family background and that his friends and teachers regarded him as sincere in his conscientious objector beliefs. The next step in the Department of Justice procedure (the hearing before a special hearing officer) was not held until October 1964, an obviously undue delay.[5] Appellant was accompanied at the hearing by his father and his Sunday School teacher, also a Quaker. Thereafter, the hearing officer sent his report to the Department of Justice, recommending that appellant's claim be upheld only in part and that appellant be classified 1–A–O (exempt from combatant but not noncombatant service), rather than 1–O (exempt from all military service). In his report, which was not sent to appellant, the hearing officer relied heavily for his conclusions upon statements allegedly made by appellant at the hearing.

In April 1965, the Department of Justice submitted to the appeal board its own recommendation, which incorporated much of the hearing officer's report, particularly his attribution of certain statements to appellant and his conclusion that appellant should be classified 1–A–O rather than 1–O. The appeal board thereafter forwarded to appellant copies of the Department of Justice recommendation and the FBI resume.[6] However, a copy of the report of the hearing officer to the Department of Justice was not sent to appellant; indeed, the appeal board itself did not receive that report, which went only to the Department. In response to the appeal board's advice that he could reply in writing "concerning the recommendation of the Department of Justice," appellant denied making a number of the statements attributed to him by the hear-

---

3. Appellant requested, received and returned in completed form SSS Form No. 150 (Special Form for Conscientious Objector).

4. Former 50 U.S.C.App. § 456(j) and former 32 C.F.R. § 1626.25. The procedure was eliminated by the Military Selective Service Act of 1967. See Note, Changes in the Draft: The Military Selective Service Act of 1967, 4 Colum.J.L. & Soc. Prob. 120, 149–51 (1968).

5. On the record before us, we cannot be sure whether the blame for the delay should be attributed to appellant or to bureaucratic inefficiencies or to both. Therefore, we have not given it independent significance.

6. The Government claims, and appellant denies, that he had also received a copy of the FBI resume in 1962. In view of our disposition of the case, the dispute is not material.

ing officer. The reference to them in the recommendation of the Department of Justice was the first notice appellant had of the hearing officer's version of his testimony. Appellant also claimed that the hearing officer had offered to "make a deal" with him to recommend a 1–A–O classification, if appellant would accept it.[7]

Thereafter, the appeal board followed the recommendation of the Department of Justice and in June 1965 classified appellant 1–A–O. In November 1965, appellant was ordered to report for induction on December 7, 1965. He reported, refused to be inducted, and subsequently was indicted. His case was tried in May 1967 before Judge Abruzzo sitting without a jury, but was reopened at the request of the Government in September 1967. The judge found appellant guilty and sentenced him to three years in prison.

## II.

■ Appellant's main contention is that the order for his induction was void because his 1–A–O classification was arbitrary and capricious since it had no basis in fact and was the product of an unfair hearing in the proceedings conducted by the Department of Justice.[8] Thus, appellant urges no broader test of review for this court than that developed in previous cases. E. g., Simmons v. United States, 348 U.S. 397, 75 S.Ct. 397, 99 L.Ed. 453 (1955); Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1955).[9] These make clear that the scope of our inquiry is a narrow one. However, whether there is a sufficient basis in fact for appellant's classification and whether his hearing in the Department of Justice was fair are questions of law on which we must pass with independent judgment.

The Government relies here on various factors, each of which the district court held was sufficient standing alone, to establish a basis in fact for appellant's 1–A–O classification by the appeal board. The most significant of these is the recommendation of the Department of Justice to that board, particularly the portion stating that the hearing officer reported that appellant

admitted that he would bear arms as a member of the Armed Forces of the United States and even kill if necessary to defend the United States against an aggressive attack by an armed enemy, and upon further questioning he stated that he would have no objection to serving in the medical corps * * *.

As noted above, as soon as appellant learned that the hearing officer so quoted

7. Appellant's letter stated in relevant part as follows:

Nor did I "admit that I would bear arms as a member of the Armed Forces and even kill if necessary to defend the U. S. against an aggressive attack by an armed enemy." I said that I would work in a civillian (sic) hospital or a medical corps in no way connected with the Armed Forces, i. e. with the Peace Corps, Medical Aid for underdeveloped nations, or with the Medical corps of UNESCO. When asked whether I would kill an armed aggressor if it were necessary to save the life of my immediate family, I replied that if there were no other means of deterring him, I would do so, but that I considered it morally wrong.

* * * [The hearing officer] had offered to "make a deal" with me, whereas if I would accept the non-combatant status, he would recommend it to the Appeal Board. I was consistent throughout the hearing on my objection to participation or preparation for war in any form on the grounds of my religious belief, and refused to accept any status with the Armed Forces. [The hearing officer] adjourned the Hearing, asking me to consider his offer. I restated my conviction by telephone, and he said there would be no need for another session.

8. Appellant also argues that the district judge was not impartial, citing many troubling passages in the record, and that the three-year sentence was excessive.

9. The "basis in fact" test for review of selective service proceedings has been codified by the Military Selective Service Act of 1967. See 50 U.S.C.App. § 460(b)(3).

him, he denied making the statements,[10] a denial repeated at his trial before Judge Abruzzo.[11] But, making both substantive and procedural arguments, appellant also claims that reliance upon the Department's recommendation is improper. Thus, he contends that a "fact" referred to in a Department of Justice recommendation but not otherwise in his selective service file cannot provide the basis in fact for his classification, that he had the right to an attorney in the proceedings before the hearing officer, that he did not receive a transcript of that hearing, and that it was improper to deny him an opportunity to rebut the hearing officer's report until after the Department had made its recommendation to the appeal board and the case had gone back to that body.[12]

We do not agree with appellant's general proposition that an appeal board can never rely on material found in the Department of Justice recommendation which does not otherwise appear in a registrant's selective service file. It is true that United States v. Stasevic, 117 F.Supp. 371 (S.D.N.Y.1953), may be read as holding what appellant now contends. However, the broad language of that decision has been limited, see United States v. Corliss, 173 F.Supp. 677, 683 (S.D.N.Y. 1959), aff'd, 280 F.2d 808 (2d Cir.), cert. denied, 364 U.S. 884, 81 S.Ct. 167 (1960), and other cases have found that facts reported only in the Department of Justice recommendation could be a sufficient basis for a classification. See, e. g., Tomlinson v. United States, 216 F.2d 12 (9th Cir. 1954), cert. denied, 348 U.S. 970, 75 S.Ct. 528, 99 L.Ed. 755 (1955); Kent v. United States, 207 F.2d 234 (9th Cir. 1953); cf. Keefer v. United States, 313 F.2d 773 (9th Cir. 1963). When Congress established the special inquiry and hearing procedure to process conscientious objector claims, it seems likely that it assumed that the Department of Justice, in making its recommendation, would consider information uncovered by its own investigation, which might not otherwise appear in the registrant's file before the appeal board.[13] The critical element in a conscientious objector claim is often the registrant's sincerity in his beliefs. It should be beyond dispute that Congress could assist draft boards—as it did from 1940 to 1967[14]—by making available to them the investigatory resources of the Department of Justice and the Department's general policy approach to a national classification problem.[15]

However, that the Department's recommendation might provide a basis in fact for an appeal board classification does not end the case. Appellant claims that on these facts that recommendation cannot be so used, because it contained statements attributed to him by the hearing officer which he did not have sufficient opportunity to rebut. He argues that at a minimum he was entitled to see a copy of the hearing officer's report before the Department of Justice made its formal recommendation. In that way, he and the two witnesses who also appeared before the hearing officer could

10. See note 7 supra.

11. Appellant's testimony at trial was substantiated by two witnesses. Although the hearing officer was called as a witness by the Government at the reopening of the trial, after appellant's version of his statements had been given, the Government did not question the hearing officer regarding the statements or the "deal" he was alleged to have offered to appellant.

12. Appellant also argues that the hearing officer applied irrelevant religious criteria under United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965), and that the purported offer of a "deal" on noncombatant status shows that the hearing officer was neither fair nor impartial.

13. See H.R.Rep. No. 2937, 76th Cong., 3d Sess. 17–18 (1940); cf. S.Rep. No. 1268, 80th Cong., 2d Sess. 14 (1948), U.S. Code Cong.Serv. p. 1989.

14. The procedure is no longer used. See note 4 supra.

15. See White, Processing Conscientious Objector Claims: A Constitutional Inquiry, 56 Calif.L.Rev. 652, 657 (1968).

have effectively disputed the latter's account of what had occurred. In essence, appellant says that the crucial time for him so to rebut was before the Department made up its mind on its recommendation to the appeal board; affording him the subsequent chance to do so before the appeal board was too late.

The Government answers that the Department of Justice recommendation, though normally followed, is not binding on the appeal board. Although there is no right of a personal hearing before the appeal board, it must give a registrant a chance to rebut the Department's recommendation. Therefore, according to the Government, appellant had a sufficient opportunity to deny the statements in the hearing officer's report after it had been incorporated into the Department's recommendation and sent to the appeal board.

In considering the issues thus posed, we note that it seems entirely natural for an appeal board to rely heavily upon the formal Department of Justice recommendation as a correct reflection of the facts in a registrant's case, particularly as to events which allegedly occurred at the hearing before a hearing officer. Doubtless in part because of this heavy reliance, the Supreme Court has made clear that procedural defects in Department of Justice proceedings may not be declared harmless merely because the Department's recommendation is not binding upon the appeal board and the registrant has an opportunity to reply to the recommendation before the board. In Simmons v. United States, 348 U.S. 397, 75 S.Ct. 397, 99 L.Ed. 453 (1955), a registrant sought exemption, *inter alia*, as a conscientious objector. There, as in this case, the appeal board referred the case to the Department of Justice, and the first step was an FBI investigation of the registrant. Similarly, the second step was a hearing before a hearing officer designated by the Department. Before the hearing, the FBI report was sent to the hearing officer, but the registrant received neither the report nor a "fair resume" thereof. See United States v. Nugent, 346 U.S. 1, 6, 73 S.Ct. 991, 97 L.Ed. 1417 (1953). The FBI report contained unfavorable evidence of which the registrant was ignorant at the time of his hearing and, therefore, did not try to rebut.[16] Thereafter, the hearing officer's report and the unfavorable recommendation of the Department of Justice relied in substantial part on that information in the FBI report. The Court held that the registrant had "been deprived of the fair hearing required by the Act," and reversed his conviction for refusing induction.

Similarly, in Gonzales v. United States, 348 U.S. 407, 75 S.Ct. 409, 99 L.Ed. 467 (1955) (Gonzales I), decided the same day as *Simmons*, the Supreme Court made clear that a registrant has a right to fair procedures both before the Department of Justice and before the appeal board. In reversing a conviction because a registrant had not received a copy of the recommendation of the Department of Justice to the appeal board, the Court said, id. at 415, 75 S.Ct. at 414:

> Just as the right to a hearing means the right to a meaningful hearing, [citing United States v. Nugent, supra, and Simmons v. United States, supra], so the right to file a statement before the Appeal Board includes the right to file a meaningful statement, one based on all the facts in the file and made with awareness of the recommendations and arguments to be countered.

Thus, the question before us is whether the Department of Justice procedures in this case gave appellant a "meaningful hearing"; specifically, should he have had the chance to contradict the hearing officer's report before the Department issued its recommendation?

---

16. Whether the registrant in *Simmons* also failed to receive, prior to his classification by the appeal board, a copy of the Department of Justice recommendation to that board does not appear from the Court's decision. However, petitioner's brief in that case in the Supreme Court states that he did not. Brief for Petitioner at 45.

The Government argues that appellant had all that was necessary for a fair hearing, citing Gonzales v. United States, 364 U.S. 59, 80 S.Ct. 1554, 4 L.Ed.2d 1569 (1960) (Gonzales II), and DeRemer v. United States, 340 F.2d 712 (8th Cir. 1965). In affirming a conviction in *Gonzales II* for refusing induction, the Court held that the registrant had no right to see the hearing officer's report to the Department of Justice. However, the five-man majority relied heavily on the fact that the hearing officer's report there was not significant because the material in the Department of Justice recommendation of which the registrant complained was based upon a memorandum prepared by the registrant's local board, which had been available to him in his draft file for several years. Therefore, the registrant was on notice all along of what might be used against him and could have rebutted it before the Department of Justice relied on it in making an unfavorable recommendation.[17] It is true that the Court in *Gonzales II*, said, 364 U.S. at 63, 80 S.Ct. at 1557:

[T]he hearing officer's report is but intra-departmental, is directed to the Attorney General and, of course, is not the recommendation of the Department. It is not essentially different from a memorandum of an attorney in the Department of Justice, of which the Attorney General receives many, and to which he may give his approval or rejection. It is but part of the whole process within the Department

that goes into the making of the final recommendation to the appeal board. However, the Court further stated, id. at 64, 80 S.Ct. at 1557, that the registrant there

knew that the Department's recommendation was based not on the hearing officer's report but on the statement of the local board in his file. Having had every opportunity to rebut the finding of the local board before both the hearing officer and the appeal board, petitioner cannot now claim that he was denied due process because he did not succeed.

We believe that *Gonzales II* does not decide the question whether in some circumstances fairness requires turning over a hearing officer's report. There is little authority directly on point. In DeRemer v. United States, supra, the Eighth Circuit agreed that *Gonzales II* left the question open, but decided on the facts before it that "production of the hearing officer's report" was not required "to guarantee appellant a fair hearing." 340 F.2d at 717. Apparently, the report there was favorable to DeRemer and he was aware at all times of the key fact relied upon by the Department of Justice in its recommendation, i. e., his employment in a factory which he knew was "engaged almost solely in defense work for the Navy." Id. at 718.

We find no other persuasive precedents either way. We regard as significant that, despite the silence of the then governing statute [18] on the point, the Court

17. Even that opportunity was not enough for the four dissenters, who would have required actual, rather than constructive, notice to a registrant of what factors the Department would rely on in its recommendation.

18. Former 50 U.S.C.App. § 456(j) provided for these procedures:

Any person claiming exemption from combatant training and service because of such conscientious objections shall, if such claim is not sustained by the local board, be entitled to an appeal to the appropriate appeal board. Upon the filing of such appeal, the appeal board shall refer any such claim to the De-

partment of Justice for inquiry and hearing. The Department of Justice, after appropriate inquiry, shall hold a hearing with respect to the character and good faith of the objections of the person concerned, and such person shall be notified of the time and place of such hearing. The Department of Justice shall, after such hearing, if the objections are found to be sustained, recommend to the appeal board that (1) if the objector is inducted into the armed forces * * *, he shall be assigned to noncombatant service as defined by the President, or (2) if the objector is found to be conscientiously opposed to par-

held that fairness required that a registrant be furnished a copy of the FBI resume of its investigative report (*Simmons*) and a copy of the recommendation of the Department of Justice to the appeal board (*Gonzales I*). In both instances, the reason for so doing was to make effective the registrant's rights at the next step of the procedure; i. e., the FBI resume could be rebutted at the hearing before the hearing officer, the Department's recommendation before the appeal board. The issue before us is similar. A Department of Justice recommendation ordinarily has great weight with an appeal board,[19] particularly since the board hears no live evidence. Therefore, there is no doubt that an objection to a hearing officer's report would be far more effective before, rather than after, the Department adds its imprimatur. Under *Gonzales II*, this general consideration might not be enough for appellant to prevail. But we have here the following facts: The Department of Justice recommendation is based largely on the assumption that the hearing officer reported correctly crucial statements made to him by appellant; before the Department issued its recommendation, appellant had no chance to correct this misinformation, if that is what it was; unfortunately, there is no transcript of what transpired before the hearing officer;[20] appellant and two witnesses flatly denied at appellant's trial that the hearing officer's version was correct; and finally, although the hearing officer was produced as a government witness when the trial was reopened months after the record was closed, the prosecutor asked him no question to rebut the testimony of appellant and his witnesses.[21]

■ Under these circumstances, we hold that it was unfair for the Department of Justice to make its recommendation before · appellant could respond to the hearing officer's version of appellant's statements, and that, therefore, those statements relied on in the Department report cannot furnish a basis in fact for his classification by the appeal board. Even though these special procedures are no longer in effect,[22] we emphasize that we are not laying down a broad, general rule which would invariably or even frequently require turning over the hearing officer's report. We hold only that on these facts, where appellant was allegedly quoted incorrectly on crucial matters, it was unfair not so to advise him before the Department acted.

### III.

■ On this disposition of appellant's main point, it is unnecessary to consider his remaining challenges to reliance by the appeal board upon the Department of Justice recommendation. However, the Government tells us that there are other bases "in fact" for the 1–A–O classification. Thus, it points out that appellant was employed during the summer after his graduation from high school with Lynn Electronics Products Corporation, which the FBI resume states was at the time "engaged in production under national defense contracts." From this the Government argues a "weakness of * * sincerity." There is nothing in appellant's file, however, to indicate either that he was personally working in de-

---

ticipation in such noncombatant service, he shall in lieu of such induction be ordered by his local board, subject to such regulations as the President may prescribe, to perform * * * such civilian work contributing to the maintenance of the national health, safety, or interest as the local board may deem appropriate * * *.

19. See Rabin, Do You Believe in a Supreme Being—The Administration of the Conscientious Objector Exemption, 1967 Wis. L.Rev. 642, 674–75.

20. We note that if a transcript of the hearing had been made the dispute over what statements appellant made at the hearing would most likely not have arisen. Note, The Selective Service System: An Administrative Obstacle Course, 54 Calif.L. Rev. 2123, 2153–56 (1966), contends that a registrant is entitled to an accurate record of statements made in selective service proceedings.

21. See note 11 supra.

22. See note 4 supra.

fense production or that he knew that his employer was so engaged. Thus, cases where a registrant has volunteered to do defense work, see, e. g., Blalock v. United States, 247 F.2d 615 (4th Cir. 1957), or has actively and knowingly participated in such work, see, e. g., De-Remer v. United States, supra, are irrelevant. Where, as here, there is no indication that appellant even had knowledge of his employer's defense contracts, no inference of insincerity can be drawn.

■ Another asserted basis in fact for appellant's 1–A–O classification is his written statement to his local draft board in answer to the following question: [23]

> Under what circumstances, if any, do you believe in the use of force?

Appellant responded:

> I believe in the use of force only if it is used as the only alternative to restrain an individual from doing wrong, but not used to indiscriminately kill.

The Government claims that the question is designed to determine a registrant's belief "concerning force which is a necessary and integral part of war" and that appellant's answer that he believed in using force "to restrain an individual from doing wrong" is a sufficient basis in fact for his 1–A–O classification. We do not agree. The statute providing exemption for conscientious objectors does not speak of objection to *force,* but rather of conscientious objection to "participa-

tion in *war* in any form." (Emphasis added.)[24] Agreement that force can be used to restrain wrongdoing, especially as the last alternative, has little bearing on an attitude toward war. We would not expect a full-fledged conscientious objector to stand by while a madman sprayed Times Square with machine gun bullets, or while an assassin took aim at the President. Cf. United States v. Pekarski, 207 F.2d 930 (2d Cir. 1953).

Finally, the Government claims that inconsistencies between various statements of appellant allowed the appeal board to draw the inference that his conscientious objector beliefs were not sincere. But once the statements attributed to appellant by the hearing officer are eliminated from consideration for the reasons already set forth, the remaining claimed inconsistencies either disappear or are trivial.

■ We find no need to discuss the remaining points urged by the parties. We have considered them all, and we conclude from the record before us that appellant's long-held convictions are the product of upbringing and sincere religious belief. It is not necessary to agree with those views to conclude that Congress meant to protect the right to hold and act upon them. Since we find no proper basis in fact for the 1–A–O classification accorded appellant, the conviction must be reversed and the indictment dismissed.

---

23. The question appears in SSS Form No. 150 (Special Form for Conscientious Objector), which the draft board furnished appellant.

24. Nothing contained in this title * * * shall be construed to require any person to be subject to combatant training and

service in the armed forces of the United States who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form.
50 U.S.C.App. § 456(j).