UNITED STATES of America
v.
Stephen BORNEMANN.
Crim. No. 12310.

United States District Court
D. Connecticut.
March 21, 1969.

Jon O. Newman, U. S. Atty., Paul S. Sherbacow, Asst. U. S. Atty., Hartford, Conn., for the United States.

Catherine G. Roraback, Canaan, Conn., for defendant.

## MEMORANDUM OF DECISION FINDINGS OF FACT CONCLUSIONS OF LAW

BLUMENFELD, District Judge.

The defendant, Stephen Bornemann, stands charged with violating 50 App. U.S.C. § 462(a) by his refusal to submit to induction into the armed forces as ordered by his local Selective Service Board. The case was tried to the court after indictment and waiver of a jury trial by the defendant and the government. There being no dispute as to the jurisdiction of the local board over the defendant, its order to the defendant to report for induction, or his refusal to submit to induction, the government offered into evidence the defendant's selective service file and thereupon rested its case.

Bornemann defends this prosecution on the ground that the local board

and the state Appeal Board had no basis in fact to deny his request for a I–O exemption as a conscientious objector; and as such, he never should have been ordered to report for induction. Since the defendant has exhausted his administrative remedies, this question is ripe for consideration. *See* United States v. Davis, 279 F.Supp. 920 (D.Conn.1967), aff'd, 390 F.2d 879 (2d Cir.), cert. denied, 393 U.S. 869, 89 S.Ct. 155, 21 L.Ed.2d 137 (1968).

### The Facts

A brief prelude to his request for a conscientious-objector classification taken from the defendant's record with the local board discloses that he registered with his board on November 24, 1962, the day he turned eighteen. On April 7, 1963, when he filled out the classification questionnaire which he filed on April 10, 1963, he was a freshman at Trinity College in Hartford. He was classified I–A on April 26, 1963. He received scholastic deferments (II–S) in October 1963, October 1964, and October 1965, which enabled him to complete the requirements for a BA degree; he was graduated in June 1966. On April 27, 1966, he was ordered to report for his armed forces physical examination on May 24, 1966. Upon his request for a postponement in order to study for his final examinations, he was given another order to report on June 21, 1966. He was found, on June 21, 1966, to be fully

acceptable for military service. He was classified I–A on June 27, 1966.

He had previously notified his local board by letter dated May 27, 1966, that he had been accepted for a year's service in VISTA. On June 29, 1966, he wrote to his local board acknowledging notice of his I–A classification of June 27th and continued: "However, after visiting your office I have learned that my earlier request for an occupational deferment [1] has yet to be considered by you, but that action shall be taken this July 7. I have been assured by Miss Barella that if my request for deferment is then denied, this letter shall stand as my official notice of appeal." The board, having heard from VISTA on June 27th, classified the defendant II–A on July 7, 1966. On July 15th, the defendant wrote the board that he was no longer with VISTA, and this was confirmed on July 22nd in a letter from VISTA. This resulted in the loss of his II–A occupational deferment, and on August 11, 1966, he was again classified I–A. About a week later, on August 19, 1966, the board received a letter from him in which he appealed the I–A classification and asked, "Please send me SSS Form 150 for conscientious objectors." [2] He filled out that form and filed it with the board on September 2, 1966. An appointment for a hearing on his conscientious-objector claim, originally set for September 29, 1966, was rescheduled for October 13, 1966. On that day the defendant made a personal appearance before the board.[3] Following the hear-

---

1. This request for a II-A deferment was based on his selection as a volunteer by VISTA (Volunteers in Service to America).

2. Title 50 App.U.S.C. § 456(j) provides in pertinent part: "Nothing contained in this title shall be construed to require any person to be subject to combatant training and service in the armed forces of the United States who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form."

3. Notation of only five questions and answers was made by the assistant clerk:

"Testimony Taken by Local
Board No. 20
"In Hearing of Stephen Bornemann,
SS 6–20–44–451
"On October 13, 1966

"Members Present: Thomas J. Martin, Chairman; Hugh McCafferty; Nicholas Pietrafesa, and Mr. Edward P. Doyle.
"The registrant was duly sworn by the Chairman.
"Q. You have been requested by us to appear. What is your full name?
"A. Stephen Bornemann.
"Q. Give us a rundown of your education.

ing his request was denied. A new notice was sent to him classifying him I–A.

On October 19th, the defendant appealed from the I–A classification. On November 2, 1966, his file was sent to the Appeal Board for the State of Connecticut by the local board, requesting "that your appeal board review the case and determine the registrant's classification."

The Appeal Board, in compliance with the statutory procedures in effect at that time, referred the file to the U. S. Department of Justice for an advisory recommendation. *See* former 50 App. U.S.C. § 456(j) and former 32 C.F.R. § 1626.25(b). An inquiry was conducted by the FBI, and a resume of that investigation was given to the defendant. Thereafter, there was a hearing before a Department of Justice Hearing Officer on September 11, 1967, at which Bornemann, his wife, his father and a minister testified. In addition, several documents expressing Bornemann's views, and character references by close friends and family, were presented to the hearing officer. The hearing officer concluded that Bornemann was "sincere in his conscientious-objector claim" and recommended to his superiors in the Department of Justice that the claim be sustained.

After reviewing the registrant's file, the FBI resume and the report of the hearing officer, the hearing officer's recommendation was rejected by T. Oscar Smith, Chief of the Conscientious-Objector Division of the Department of Justice. In the Department's recommendation to the state Appeal Board, *see* former 32 C.F.R. § 1626.25(d), Smith noted that there was an inconsistency in the statements made by Bornemann at the hearing before the local board on October 13, 1966, and the statements in the SSS Form 150 he had filed with the local board. Smith also noted that Bornemann first presented his conscientious-objector claim late, not "until about one week after he had been again classified I–A on August 11, 1966 and military service had become imminent for him." Smith, therefore, concluded that "the registrant is not sincere in his conscientious-objector claim" and the Department of Justice recommendation to the Appeal Board was that Bornemann's claim be denied.

The Appeal Board unanimously denied the claim and classified Bornemann I–A. Bornemann was ordered to report for induction on September 4, 1968. He appeared at the induction center at the appointed date but refused to submit to induction by failing to take the symbolic "one step forward." This prosecution followed.

"A. I graduated from high school in June of 1962 and from Trinity College in June of 1966. I received a Bachelor's of Art degree in Government.

"Q. Please give us your reasons for claiming to be a conscientious objector?

"A. The registrant stated that he had been opposed to war and serving his country back when he was only 18. He stated that he did not beleive [sic] in a God of any sorts. He states that his father was a conscientious objector in World War II, but said that his ideas did not stem from his father's convictions entirely. He said that he would not serve in anything affiliated with the war or warwork.

"Q. Well, what kind of work could you do?

"A. Oh, probably Public Health Service and Mental Health Services.

"Q. Why then, if you were a C-O back in 1963, didn't you fill out a form at that time?

"A. Well, I didn't really feel it was necessary because I was in school and I knew I would be allowed to finish school and then I went into VISTA and I had a II-A at that time, and I didn't think I had to do so then. I thought I would waint [sic] until I was I-A.

"Are there any further questions, gentlemen?

"The hearing was then brought to a close.

s/ Joyce B. Bruno

Assistant Clerk"

### The Standard of Review

█ The only question to be considered is whether there is "any basis in fact" in the record for the denial of the defendant's request for a I–O exemption as a conscientious objector. Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946). It has now become a classic statement that the scope of inquiry under this standard of review is "the narrowest known to the law," e. g., Blalock v. United States, 247 F.2d 615, 619 (4th Cir. 1957) ; see United States v. Purvis, 403 F.2d 555 (2d Cir. 1968).

The defendant challenges the application of this limited test on two grounds. First, he contends for a standard requiring a "substantial basis for the classification order," relying upon a single sentence in the opinion in Cox v. United States, 332 U.S. 442, 453, 68 S.Ct. 115, 120, 92 L.Ed. 59 (1947):

> "Although we held in Estep that Congress did not intend to cut off all judicial review of a selective service order, petitioners have full protection by having the issue submitted to the trial judge and the reviewing courts to determine whether there was any substantial basis for the classification order."

In the context of the entire opinion, it is clear that the Estep standard was reaffirmed, not modified, by Cox. This is pointedly emphasized by the following quote from the dissent of Justices Murphy and Rutledge:

> "Specifically, I object to the standard of review whereby the draft board classification is to be sustained unless there is no evidence to support it. Less than a substantial amount of evidence is thus permitted to legalize the classification." Cox v. United States, 332 U.S. 442, 457–458, 68 S.Ct. 115, 122, 92 L.Ed. 59 (1947) (emphasis added).

The stark rule of Estep remains unmodified.

Also, he contends that the "basis in fact" test cannot be applied in this case.

Pointing to the summary of his hearing before the local board, the defendant argues that it is not possible to determine whether his request for a I–O was denied on the ground of a lack of his belief in God or on the ground that his belief was not sincerely held. He argues that since the summary of his testimony reads that "he stated that he did not believe in a God of any sorts" the local board might have erroneously determined that the quality of his religious belief did not meet the statutory standard for a I–O classification, e. g., United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965), instead of determining that he was not sincere in his conscientious objection claim.

While the standard of review under Estep does not require either board to set out the basis for its decision, see 32 C.F.R. § 1626.27(a), where the record leaves it "impossible to determine on exactly which grounds the Appeal Board decided, the integrity of the Selective Service System demands, at least, that the Government not recommend illegal grounds." Sicurella v. United States, 348 U.S. 385, 392, 75 S.Ct. 403, 406, 99 L.Ed. 436 (1955).

In United States v. Jakobson, 325 F.2d 409 (2d Cir. 1963), aff'd sub nom. United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965), the Appeal Board, in denying the registrant's claim for an exemption, had omitted any indication of what ground it had relied upon. However, in Jakobson, the "Department of Justice had recommended denial of Jakobson's claim on two grounds: that he lacked sincerity, and that his objections were not based on religious training and belief within the meaning of the statute." 325 F.2d at 412. Although the Court of Appeals found that, "[i]n Jakobson's case, as in Witmer's there were enough 'objective facts before the Appeal Board to * * * cast doubt on the sincerity of his claim * * *,'" id., it was unable to determine that the Appeal Board did not base his classification on the alternative ground by the application of an erroneous test to deter-

mine that his beliefs did not fall within the statutory definition of religion.

■ The defendant attempts to structure his case to create the dilemma of alternative guesses present in *Jakobson*. He argues that the notation by the local board of his statement that he did not believe in a "God of any sorts" indicates that the local board may have concluded that the quality of his religious belief did not meet the statutory standards and may have denied his claim on that ground. Even if it is assumed that the local board may have erroneously subjected the defendant's religious views to pre-*Seeger* standards, his reliance on *Jakobson* is nevertheless misplaced. Of course, it is presumed that the record of the proceedings before the local board received the careful attention they deserved. *See* Storey v. United States, 370 F.2d 255, 259 (9th Cir. 1966). It is clear under Selective Service regulations that a registrant claiming an exemption or a deferment receives de novo review of his claim by the Appeal Board, *see* 32 C.F.R. §§ 1626.24, 1626.26, and that "it is the *Appeal Board* which renders the selective service determination considered 'final' in the courts, not to be overturned unless there is no basis in fact." Gonzales v. United States, 348 U.S. 407, 412–413, 75 S.Ct. 409, 412, 99 L.Ed. 467 (1955) (emphasis added). Therefore, an erroneous test applied by the local board does not constitute a defense to a felony prosecution where there is nothing to indicate that the Appeal Board did not make a de novo decision from a record containing all the evidence. *Compare* Bowles v. United States, 319 U.S. 33, 35–36, 63 S.Ct. 912, 87 L.Ed. 1194 (1943), *with* United States v. Stepler, 258 F.2d 310 (3d Cir. 1958).

■ While the recommendation of the Department of Justice to the Appeal Board mentions the statement of the defendant before the local board that "he did not believe in a God of any sorts,"

it noted merely that this statement "would *seem* to be contrary to his previous statement of his belief in a Supreme Being in his answer to question I, Series II * * *." 4 (Emphasis added). That this was not to be considered as a factor in determining the religiosity of the belief Bornemann professed to hold is amply clear, for the Department immediately pointed out to the Appeal Board the limited significance of this "seeming" discrepancy: "The inconsistent statements and conduct of the registrant may be considered by the local board in determining the sincerity of the registrant's conscientious-objector claim. Witmer v. United States, 348 U.S. 375 [75 S.Ct. 392, 99 L.Ed. 428]." There is every indication that the only ground the Department of Justice concerned itself with was whether Bornemann was a *sincere* conscientious objector, for it recommended only one ground for denying his claim: " * * * that the registrant is not sincere in his conscientious-objector claim * * *." To permit the defendant to impose his view that the Appeal Board attached an improper significance to two isolated statements and to completely leave out everything else in order to create the impression that it relied on an illegal test is to ignore the careful statement of the Department of Justice and the supporting authority it cited.

### The Sincerity of the Defendant

■ In determining whether there is any "basis in fact" for the denial of his claim to exemption on the ground that he was a conscientious objector, the critical question is the sincerity of his conscientious opposition to participation in war in any form. The denial may rest on objective facts inconsistent with sincerity in making the claim, or on a disbelief in the sincerity of the claim, despite the absence of inconsistent facts, provided the disbelief is honest and rational. United States v. Corliss, 280 F.2d

---

4. Permitting consideration of the two statements as inconsistent is a recognition of two concepts—one empirical and the other intellectual—without necessarily challenging the validity of either.

808, 814–815 (2d Cir.), cert. denied, 364 U.S. 884, 81 S.Ct. 167, 5 L.Ed.2d 105 (1960).

The hearing officer's conclusion that the registrant was sincere and his recommendation that his claim be sustained are not evidence of basic facts, but rather, reflect an inference he would have drawn from them. Although his difference in view from that of the Chief of the Conscientious-Objector Section of the Department of Justice may indicate that a conclusion contrary to the board would also be a reasonable one, that does not give the court an option to choose between them. "Moreover, the hearing officer's report is but interdepartmental, is directed to the Attorney General and, of course, is not the recommendation of the Department. It is not essentially different from a memorandum of an attorney in the Department of Justice, of which the Attorney General receives many, and to which he may give his approval or rejection. It is but part of the whole process within the Department that goes into the final recommendation to the appeal board." Gonzales v. United States, 364 U.S. 59, 63, 80 S.Ct. 1554, 1557, 4 L.Ed.2d 1569 (1960). The question is still whether there is any basis in fact for the decision made by the Appeal Board.

█ The disagreement did serve a useful purpose, however. It had the effect of evoking a considered explanation from the Department of Justice as to why it reached a different conclusion. The independent re-evaluation of the file as developed in the Department's recommendation reflects its analysis and clarifies the point to be decided by the Appeal Board. The thrust of the recommendation is based on the chronological record in the defendant's file. That reveals that he did not claim to be a conscientious objector until one week after August 11, 1966, when he had been again classified I–A and military service had become imminent for him. Among authorities who have been faced with the difficult question of determining what may support disbelief in the sincerity of

a conscientious-objector claim it has become standard to hold that "the belatedness of a claim may be a factor in assessing its genuineness." United States v. Gearey, 368 F.2d 144, 149–150 (2d Cir. 1966), cert. denied, 389 U.S. 959, 88 S.Ct. 335, 19 L.Ed.2d 368 (1967). Even as late as June 29, 1966, when he was impatient to learn whether his application for an occupational deferment by reason of service in the VISTA Program, he filed a protective appeal from its possible denial without mentioning his conscientious-objector scruples. *Cf.* Salamy v. United States, 379 F.2d 838, 842 (10th Cir. 1967).

█ In support of his argument that his proclaimed belief in the primary principle of opposition to war was sincere, he filed a written statement with the hearing officer in the concluding paragraph of which he wrote, "I ask you to accept the overwhelming content of the material in the Resume of Inquiry as is relevant to establishing the 'character and good faith' of my objections to training and service under the Selective Service Act." Earlier in that statement he had written: "As pertains specifically to this hearing, I accept the general findings in the Department of Justice investigation, as summarized in the Resume of Inquiry." But that resume is not uniformly favorable to the defendant's contention. It reports that in his senior year at college the registrant stated to a former roommate, "If I have to go into the Army, I will" and that the registrant indicated opposition to the Vietnam policy. It also reports that the registrant's freshman roommate, when having lunch at school with the defendant about midway through the second semester of his senior year asked him what he was going to do about the draft after he graduated. He replied that he was looking into the matter of conscientious objection and seemed to think this was the best alternative. These items in the Resume of Inquiry could have been relied upon by the Appeal Board, *see* United States v. Purvis, 403 F.2d 555 (2d Cir. 1968), as undercutting the sincerity of his state-

ment during his interview by the local board that he had been opposed to war and serving his country when he was only eighteen. "In conscientious objector cases, therefore, any fact which casts doubt on the veracity of the registrant is relevant." Witmer v. United States, 348 U.S. 375, 381–82, 75 S.Ct. 392, 396, 99 L.Ed. 428 (1955).

 Fortunately, I am not here concerned with Bornemann as a philosopher. Indeed, he scarcely attempts to assume that role. Undoubtedly he took great pains to attain a structure of thought that would satisfactorily answer for him a problem which is of troublesome concern to many young men faced with the prospect of compelled service in the armed forces. *Compare* United States v. Corliss, 280 F.2d 808, 811–812, 816 (2d Cir. 1960). It must be recognized that this is not a case where a court is called upon to decide as one who heard the original evidence. Nor can the "whole record" concept which he urges be applied to test the finding of the Appeal Board. Since there were enough facts before the Appeal Board to cast doubt on the sincerity of his claim, there is a basis in fact for the classification of the defendant as I–A and the denial of his claim for classification as a conscientious objector.

Enter a judgment of guilty.