**UNITED STATES of America,**
**Plaintiff,**

v.

**Jan Nettleton HAFFNER, Defendant.**

**Crim. No. 12394.**

United States District Court
D. Hawaii.

July 11, 1969.

Charles H. Silva, Jr., Bicoy & Yamane, Honolulu, Hawaii, for defendant.

Yoshimi Hayashi, U. S. Atty., Honolulu, Hawaii, for plaintiff.

## DECISION

PENCE, Chief Judge.

Jan Nettleton Haffner, defendant herein, has been indicted for refusal to submit to induction (50 App. U.S.C. § 462(a)). Defendant presently moves to dismiss the indictment, primarily on the ground that there is no "basis in fact" for the refusal of his Selective Service Local Board to grant him conscientious objector status.

Shortly following his 18th birthday, defendant Haffner registered with his Local Board, at which time he informed the Board that he wished conscientious objector status. The Board sent him a Special Form for Conscientious Objectors (SSS Form No. 150) which defendant completed and returned. The Board withheld determination of the conscientious objector claim, instead classifying him I-S-H (High School Deferment, SSS Regs. § 1622.15).

Following his graduation from high school, the Board reclassified defendant I-A, in effect rejecting his conscientious objector claim. Defendant requested and was given a personal interview with the Board, following which he again received a I-A classification. An appeal was then taken to the State Appeal Board. That Board unanimously voted to deny defendant's claim and he was sent a final I-A notice. Defendant subsequently tore up his classification card and mailed it to the Local Board. He was declared a delinquent (SSS Regs. § 1642.4) and ordered to report for induction on April 15, 1968. Defendant did not go to the induction center, as directed,[1] and this indictment followed.

This court's review of selective service classifications is narrowly limited. In Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946), the Court said:

"The provision making the decisions of the local boards 'final' means to us that Congress chose not to give administrative action under this Act the customary scope of judicial review which obtains under other statutes. It means that the courts are not to weigh the evidence to determine whether the classification made by the local boards was justified. The decisions of the local boards made in conformity with the regulations are final even though they may be erroneous. The question of jurisdiction of the local board is reached only if there is no basis in fact for the classification which it gave the registrant." (At 122–123, 66 S.Ct. at 427)

Thus the initial question is whether there is a "basis in fact" supporting the denial of defendant's claimed conscientious objector exemption.[2] The record which was available to the Appeal Board (and this court) includes Selective Service Classification Questionnaire (Form 100), Special Form for Conscientious Objectors (Form 150), and Minutes of Action by Local Board.[3]

Defendant, in filling out the Selective Service Classification Questionnaire

1. Resort to the Appeal Board exhausted defendant's administrative remedies. McKart v. United States, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (May 26, 1969); Callison v. United States, 413 F.2d 133 (9 Cir. June 18, 1969).

2. Local Boards, in determining whether an applicant is entitled to conscientious objector status, are guided by Section 6(j) of the Military Selective Service Act of 1967 (50 App.U.S.C. § 456(j)) which provides ·

"Nothing contained in this title shall be construed to require any person to be subject to combatant training and service in the armed forces of the United States, who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form. As used in this subsection, the term 'religious training and belief' does not include essentially political, sociological, or philosophical views, or a merely personal moral code."

3. The government does not argue, and the Local Board did not find, that defendant was insincere in his beliefs.

claimed to be a conscientious objector and requested the Special Form for Conscientious Objectors (Form 150). An examination of his Form 150 reveals that defendant declined to answer the question relating to belief in a Supreme Being, stating rather that this depends on a definition of that term. In describing the nature of his beliefs, he stated that he is "a very religious person", although he does not believe in an anthropomorphic God. He believes "in man himself and that his relation to the universe is unique and that the 'supremeness' lies within his mind. God is within man. He is many things: Love, compassion, honesty, etc. When a man dies his god also dies, therefore to kill a man is to kill a god. And to suppress the ideas of a man is to inhibit and stunt the god in him. If man were a God, however, he could conceivably have the right to take a life, but for all his supreme characteristics man *is not* God (italics in original), he is human, and 'human' is a mixture of both God and animal. The true God is only an idea, a state of mind which is part of us; without man there is no God."

Defendant specified no source for his training and beliefs, and listed no one individual as being one upon whom he relied for religious guidance. He is the member of no religious sect or organization.

The Minutes of Action by Local Board, and also the Report of Oral Information, reflect that the defendant does not believe in killing others, using violence or force, or bearing weapons.

The Minutes of Action by Local Board also reveal that the decision of the Local Board was as follows:

"Retained in Class I-A. Members felt that he [defendant] is not a conscientious objector, as his belief is not due to religious training but merely personal belief."

Subsequently, the Board of Appeals unanimously upheld the I-A classification, without comment.

It is the government's argument that the Local Board correctly concluded from the information contained in defendant's Selective Service file that the beliefs of defendant are philosophically and intellectually based, and further that these beliefs "do not occupy the same place in the life of the [defendant] as an orthodox belief in God holds in the life of one clearly qualified for exemption." [4]

It might be conceded that such could have been the Local Board's interpretation of defendant's beliefs. However, the minutes of the defendant's Selective Service file (Minutes of Action by Local Board, page 8; and again at Report of Oral Information) indicate conclusively that the decision of the Local Board to retain defendant in class I-A was based upon the now impermissible distinction between a belief "due to religious training" and "religious belief." [5]

■■■ The clear implication of the decision of the Local Board, namely that a belief based on religious training is a prerequisite to granting conscientious objector status, cannot stand in light of *Seeger* (see note 4), and its progeny.[6] The test is not whether defendant has had prior religious training with his belief stemming therefrom. Belief in an orthodox God is not required.[7] The test simply is whether the claimed belief occupies the same place in the life of the objector as an orthodox belief in God holds in the life of one clearly qualified for exemption.[8] If it does occupy this place, then it is not essentially a philosophical view or a "merely personal moral code." [9]

4. Test enunciated first in United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965).

5. See n. 2, *supra*.

6. Fleming v. United States, 344 F.2d 912 (10 Cir. 1965); United States v. Shac-

ter, 293 F.Supp. 1057 (D.Md.1968); United States v. St. Clair, 293 F.Supp. 337 (E.D.N.Y.1968).

7. *Seeger, supra* n. 4, at 176, 85 S.Ct. 850.

8. *Ibid.*

9. *Id.* at 186, 85 S.Ct. 850.

This court recognizes that the nature of the belief cannot be essentially political, sociological, or philosophical. It must be "religious". In *Seeger*, the United States Supreme Court wrestled with an earlier version of 50 U.S.C. App. § 456(j) (1958 ed.), which defined "religious training and belief" as "an individual's belief in a relation to a Supreme Being involving duties superior to those arising from any human relation, but [not including] essentially political, sociological, or philosophical views or a merely personal moral code." The Court there concluded that the term "Supreme Being" meant not only the orthodox God, but also the "broader concept of a power or being, *or a faith* (emphasis added), 'to which all else is subordinate or upon which all else is ultimately dependent'." [10]

█ The congressional removal, in 1967, of reference to a "Supreme Being" in the statute, did not substantively change the statute.[11]

█ It is manifest that, in the case at bar, the Local Board set up a test which had been made impermissible by the *Seeger* case. This court could, therefore, grant defendant's motion to dismiss the indictment on this ground alone. Further, however, an examination of the record available to the Appeal Board discloses no basis for the denial by that Board of the claim of defendant; it did but affirm, without comment or explanation, the ruling of the Local Board. Had the *Seeger* standards been applied by either the Local or Appeal Boards, presumably the claim of defendant would have been granted. The humanism of this defendant no less entitles him to conscientious objector status than the humanism of Seeger,[12] Jakobson,[13] or Shacter,[14] or the pantheism of St. Clair.[15]

█ Defendant has also argued that the failure of the Local and Appeal Boards to note with specificity the facts which they relied upon in concluding that defendant was not entitled to conscientious objector status vitiates the I–A classification, citing in support of this proposition the cases of United States v. St. Clair, *supra*, and United States v. Purvis, 403 F.2d 555 (2 Cir. 1968). The proposition was first enunciated in *Purvis*. There, however, the Local Board Hearing Officer allegedly misquoted petitioner. Subsequently the Department of Justice relied upon the misquotation in recommending to the Appeal Board that the claim of petitioner be denied. The Court in that case felt that petitioner should have been given a copy of the report of the Department of Justice so that he could have an opportunity to obtain evidence to support his case before the Appeal Board. There is here no similarity to the *Purvis* facts. The defendant knew everything he had related to the Local Board. No new "facts" were injected into his record.

█ Moreover, the Ninth Circuit in Parrot v. United States, 370 F.2d 388 (1966) and more recently in United States v. Haughton, 413 F.2d 736 (decided June 19, 1969) decided the question whether a local board must find and record affirmative evidence that a registrant has misrepresented his case, holding, on the authority of Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132 (1953) that such a finding and recording of evidence is not required of local boards. The only requirement is

10. *Id.* at 174, 85 S.Ct. at 858.

11. United States v. St. Clair, *supra* n. 6, 293 F.Supp. at 343.

12. Seeger's was a "belief in and devotion to goodness and virtue for their own sakes and a religious faith in a purely ethical creed." *Seeger, supra,* n. 4, at 166, 85 S.Ct. at 854.

13. Jakobson believed in "Godness" which was the "Ultimate Cause for the fact of the Being of the Universe." United States

v. Jakobson, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (a companion case, decided with *Seeger*).

14. Shacter believed that the highest possible value must be placed on human life, that man's life is sacred, that mankind if a holy entity, that the killing of one of its parts is a sin no man can endure. *Shacter, supra,* n. 6.

15. St. Clair believed that everything was God. *St. Clair, supra* n. 6.

832

that in applying the "basis in fact" test, courts must search the record of the board to ascertain whether the evidence before the board establishes the· exemption, and where the registrant has met the statutory criteria, then the board could not, without contrary evidence, deny the exemption.[16]  As heretofore indicated, here the applicant met the statutory criteria and the Local Board should not have denied the exemption sought.

The motion to dismiss is hereby granted.

16.  Dickinson v. United States, *supra* at 391, 74 S.Ct. 152.