UNITED STATES of America ex rel. Thomas M. SCOTT, etc., Petitioner,

v.

John C. F. TILLSON, III, etc., et al., Respondents.

UNITED STATES of America ex rel. James E. JORDAN, III, etc., Petitioner,

v.

John C. F. TILLSON, III, etc., et al., Respondents.

Civ. A. Nos. 1477, 1478.

United States District Court
S. D. Georgia.

Oct. 3, 1969.

John Ruffin, Augusta, Ga., Peter E. Rindskopf, Atlanta, Ga., for petitioners.

R. Jackson B. Smith, U. S. Atty., William T. Morton, Asst. U. S. Atty., Augusta, Ga., for respondents.

## ORDER

LAWRENCE, Chief Judge.

Privates Thomas M. Scott and James E. Jordan, III, who are at present in the United States Army at Fort Gordon, Georgia, filed petitions for writ of habeas corpus seeking to be released from the service on the ground that they are conscientious objectors opposed to war because of religious convictions.

The case was heard before this Court at Augusta on September 9th. Over respondents' objections, additional testimony from petitioners was permitted to be heard by the Court. The Army records connected with the applications of petitioners for discharge from the service reveal the following:

## SCOTT

Thomas M. Scott entered the United States Army Reserve under the Delayed Entry Program on June 11, 1968 for a term of six years. A few months later he enlisted in the Regular Army for three years. On neither occasion did he claim that he was a conscientious objector. He did not apply to his local Selective Service Board for such status. After eight weeks of Basic Combat Training he was assigned to the Southeastern Signal School at Fort Gordon for training as a communication center specialist. He had requested this military occupational specialty on his enlistment.

On March 24, 1969 Scott submitted an application for discharge from the Army as a conscientious objector under Army Regulation 635-20. His application stated that he believes in a personal God who exists within the individual and who guides each individual differently. This guidance is apparently revealed by the actions of both men and nature. The foundations of his present beliefs are derived from parental guidance and association with the Presbyterian Church. Several years ago he drifted away from that Church. He has evolved a theory that religion is "ultimated" of an individual spiritual belief and he has gravitated toward the Unitarian-Universalist Church. Its tenets are interpreted by him to mean that individual beliefs constitute the revelation of religious truth. His beliefs do not include the use of force or participation in war. Overt manifestations of his beliefs consisted of discussions with friends, abstinence from the use of tobacco, alcohol and the hunting of animals, and participation in church activities as a younger man.

On March 25, 1969 Scott was interviewed by Chaplain James E. Bishop who stated that in his opinion his beliefs were sincerely held. However, the Chaplain felt that the basis for his objection to war was philosophical and moral. On April 2nd petitioner was interviewed by his unit commander, Captain John C. Doscher. The latter recommended that petitioner's application for discharge as a conscientious objector be disapproved because his enlistment and his claimed beliefs were inconsistent and because the application was not submitted prior to his receipt of notification of a pending assignment to Viet Nam. On April 4th Scott was interviewed by his acting battalion commander who concurred in Captain Doscher's conclusions and recommended that the application for discharge be disapproved.

Based on the foregoing, the brigade commander, through an adjutant, recommended disapproval because Scott had failed to state his beliefs prior to entry into the Army, because his beliefs were based on philosophical views and his own moral code and because he did not an-

nounce his objections to war until after notification of assignment to duty in Viet Nam.

On April 14, 1969 the respondent, General Tillson, through an adjutant, recommended disapproval of the application based on information contained in the application and on the brigade commander's comment. Lieutenant Colonel Anthony M. Fracasso, a Chaplain, interviewed petitioner. He stated that while Scott seemed sincere in his beliefs, it was his opinion that the application was based "on philosophical grounds and a personal moral code."

On July 1, 1969 a board composed of four officers, including an attorney and a Chaplain, considered Scott's formal application for discharge at the direction of The Adjutant General of the Army. The board unanimously disapproved on the ground that his beliefs were founded upon a personal moral code rather than upon religious training and belief. Each member commented upon the proximity of the application to receipt of his Viet Nam assignment. They felt that this affected the sincerity of his professions.

On July 3, 1969 The Adjutant General of the Army notified Scott that his application had been disapproved. On July 31st he was given a duty assignment in Germany. Two weeks later he filed this petition for a writ of habeas corpus.

### JORDAN

James E. Jordan, III, now aged 22, enlisted in the Regular Army on June 17, 1968 for a term of three years. He made no claim at that time that he was a conscientious objector. After undergoing eight weeks of Basic Combat Training he was assigned to the Southeastern Signal School at Fort Gordon for training as a communication center specialist, the occupational specialty which he requested at his enlistment. On December 10, 1968 petitioner received official orders for duty in Viet Nam. Early in January, 1969 Jordan informed his unit commander that he wished to apply for discharge from the Army as a conscientious objector. On January 15th he submitted a formal application for discharge under the Army Regulations.

Jordan's application discloses that while he is uncertain of the existence of a Supreme Being, he believes in the way of life propounded in the teachings of Christ. It is his belief that it is "wrong to kill a fellow human being under any circumstances whatever". War is inconsistent with his interpretation of the teachings of Christ. He regards service in the armed forces as a "living lie" because of its conflict with his convictions.

At one time he had been of "hawkish" sentiments. However, an encounter when he was in college with some soldiers from Fort Bragg revealed a lot of things he had never known about the war in Viet Nam. He became totally opposed to the war by July, 1967. He became a pacifist that year as a result of meeting someone called "Tom, the Profit" [sic] —the "most Christ like person I've ever met". According to Jordan, this individual showed him how to live and love everyone rather than to hate and kill and that he "is probably the one who did more than anyone else to change me toward pacifism". According to petitioner, "We are all brothers of the human race no matter what form of government, civilization or religion we live by. War has never changed anything except for boundary lines. People have to change not forms of government, peace and brotherhood is all that is left, or we shall all surely perish in one final large war."

Overt manifestations of his beliefs consisted, he said, of discussions with friends, authoring a play against racism and hypocrisy, participation in three peace demonstrations, and sending a telegram to President Lyndon B. Johnson when the President announced cessation of bombing North Viet Nam.

On January 9, 1969 Jordan was interviewed by an Army Chaplain, Captain

James E. Bishop, who reported that petitioner "is sincere in his objection which seems to be based on philosophical and moral reasons." On January 13 he was interviewed by Captain Robert Schwartz, a psychiatrist, who stated that petitioner has no mental disease and "bases his desire for conscientious objector status on a moral abborrence [*sic*] of war and violence." Petitioner apparently told the psychiatrist that he would rather go to jail than support the military. On January 15th petitioner's commanding officer, First Lieutenant Chauncey A. Spencer, recommended that petitioner's application for discharge as a conscientious objector be disapproved because his application was not submitted until after petitioner received notification of assignment to Viet Nam.

On January 21, 1969, after interviewing Jordan, Major Robert B. Malone, his battalion commander, recommended that the application for discharge be disapproved because of the inconsistency in the claim that his convictions existed prior to enlistment in the Army when they were not announced until shortly after being informed of pending assignment to a theater of war. Major Malone further said that Jordan's beliefs were based on political, sociological, philosophical beliefs and a personal moral code. On January 28th his brigade commander, through an adjutant, concurred in Major Malone's comment and recommended disapproval of the application.

On February 24, 1969 the respondent, General Tillson, through an adjutant, recommended disapproval. On April 8th Captain John C. Doscher, Jr. interviewed petitioner and recommended disapproval for essentially the same reasons stated by petitioner's unit commander. In July, 1969 a board of four officers, including an attorney and a Chaplain, considered petitioner's formal application for discharge at the direction of The Adjutant General of the Army. It unanimously disapproved Jordan's application. It based its decision on findings that petitioner's beliefs were a personally held moral code rather than the product of religious training and beliefs. Three members of that board found a relation between petitioner's application and the date of his orders to Viet Nam and hence questioned the sincerity of his beliefs.

On July 3, 1969, the Adjutant General of the Army notified petitioner that his application had been disapproved. Jordan received his orders that month to report to a duty assignment in Germany. Six weeks later he filed a petition for writ of habeas corpus in this Court.

The above summaries are taken from the military personnel files of the petitioners. It does not include additional evidence offered by them at the hearing on September 9th. Counsel for General Beatty objected to any supplementation of the Army record, insisting the habeas corpus proceeding cannot be a *de novo* hearing and that courts have only the right to review the record made before the military agency. See United States v. Ruud, D.C., 299 F.Supp. 408; Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428; Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567. On the other hand, citing Crane v. Hedrick, D.C., 284 F.Supp. 250, 255, petitioners argue that the proper standard for such hearings embraces consideration of "any evidence, not already before the court, that the [Adjutant General] might have considered in arriving at his decision".

In a previous conscientious objector case tried before me (United States ex rel. Healy v. Beatty et al., D.C., 300 F.Supp. 843) I permitted additional evidence by the applicants. Perhaps I was wrong.[1] It seemed somewhat strange to me that after ordering the Army authorities to have "the body" of the petitioner brought before the court, the applicant for discharge must be a voiceless party at the hearing. Be that as it may, my conclusion in this case would be the same on the Army records or on such

1. This case is now on appeal in the Fifth Circuit Court of Appeals.

**410**

records as supplemented at the habeas corpus proceeding.

According to my notes of the hearing on September 9th, there was testimony on behalf of Scott that the notification to him of change of APO came through late in February, 1969 *after* he had filed his application for discharge as a conscientious objector.[2] A Unitarian minister testified to his familiarity with the beliefs of Private Scott who affiliated last March with his Church. He said that his views are compatible with Unitarianism and that although conscientious objection is not a doctrine of that Church, it is recognized by it. Private Scott testified and reiterated that he is opposed to all war and could not participate in a system that condones killing. He denied that he ever received orders to serve in Viet Nam. That statement is refuted by assertions in the record by Captain Doscher and Major Malone.

Private Jordan said that he believed that all men should live as closely as possible to the way Christ lived. He claims no organized religion as his own although he attended Methodist College. He expatiated on his role in certain peace demonstrations which were organized by the Youth International Party (Yippies). He said he ceased to participate when he saw that they promoted violence. As I recall his testimony, he stated that he did not file his conscientious objector application until after he got orders for Viet Nam on December 10, 1968. However, there was testimony that shortly before that time he had talked to a company clerk about the subject and the forms necessary to fill out.

■ Both sides agree that the proper standard of judicial review in habeas corpus cases is the existence of a "basis in fact" for the Army's findings. Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567; Hammond v. Lenfest, 2 Cir., 398 F.2d 705. I find that these two young men voluntarily enlisted in the regular Army and claimed no conscientious objector classification. Nei-

ther registered as such before the Selective Service Board. They went through Combat Training saying nothing about their contrary religious beliefs. It was only after service in Viet Nam became imminent that their scruples about war surfaced. The juxtaposition of the immediacy of combat duty in Southeast Asia and the emergence of their conscientious objection to military service is too patent, too telling, too compelling to be disregarded. Delay in filing of conscientious objection to military service until one has advanced to special weapon training is no ground, in itself, for denial of discharge if his views have a religious basis and are sincerely held. United States ex rel. Brooks v. Clifford et al., 4 Cir., 409 F.2d 700. But here the Army has found no factual support for that claim.

■ There is substantial basis in fact in the Army records to support the denial of discharge to Scott and Jordan. The finding by the board that their objection to war does not have its source in religious training or belief but is an expression of personal moral codes or philosophies is a conclusion fully supported by the record in each case. The respective applications of the petitioners are denied in each instance.

---

2. This is disputed in the personnel file by Captain Doscher.