UNITED STATES of America ex rel., Pvt. Stuart A. CONFIELD, United States Army, SSAN: 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, Co. B, 8th Bn., USASESS, Fort Gordon, Georgia, Petitioner,

v.

John C. F. TILLSON, III, Major General, United States Army, Commanding General, Fort Gordon, Georgia, and Stanley R. Resor, Secretary of the Army, Respondents.

Civ. A. No. 1535.

United States District Court,
S. D. Georgia,
Augusta Division.

April 30, 1970.

John H. Ruffin, Jr., Augusta, Ga., Howard Moore, Jr., Peter E. Rindskopf, Atlanta, Ga., for petitioner.

R. Jackson B. Smith, Jr., U. S. Atty., William T. Morton, Asst. U. S. Atty., Augusta, Ga., for respondents.

## ORDER

LAWRENCE, Chief Judge.

Petitioner seeks release from military service as a conscientious objector. He was inducted into the Army in March, 1969, and underwent Basic Combat Training at Fort Dix, receiving a rating of excellent in conduct and efficiency. He was assigned to the Signal School at Fort Gordon in July of the same year.

On October 1, 1969, Private Confield applied for discharge on conscientious objectorship grounds. His application ended its journey through channels on January 21, 1970, when the Conscientious Objector Review Board concurred in the disapproval of same. It said that Private Confield based his objection on "a particular war" and was only a pacifist

when it suited his particular purposes.[1] The decision was also based on lack of sincerity in his professed beliefs and the fact that his objections were based on philosophical views and a personal moral code unrelated to religious beliefs.

Of all the reviewing officers and officials [2] only his immediate commanding officer recommended approval of the application. Captain McGreevy believed that he "appears to be very sincere" with "strong feelings" as to "wanton taking of any life."

The job imposed on the Federal Courts, as well as on draft boards and the armed services, is no easy one in these cases. The articulate service man undoubtedly possesses an advantage in conscientious objector proceedings so far as the District Judges are concerned. At least that has been my experience. The Fourth Circuit has recently cautioned that: "Entitlement to that status is not limited to those registrants who have read United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965), and its progeny, and can express their views with them as models, or to those registrants who have counsel familiar with selective service law available to assist them."

Private Confield is highly articulate. He received his elementary and high school education in the public schools of Newark and in 1968 graduated at Rutgers University. Later he taught English in high school. He was born in the Jewish religion. His father is living. The family apparently was not especially religious. Confield says that while he was "born and raised a Jew * * * I am no longer a devotee of Judaism." At the time of his induction he did not claim conscientious objector status. He had never had military training before and described basic combat training as a "shock." His views on war have crystallized since he has been in the Army.

He says that "human life is sacred" and "I do not wish to kill." Life is his religion and he worships "Beauty, innocence, freedom, love, peace." It amounts, he claims, "to a religious interpretation concerning my relation to the world. My sensitive god of life occupies a place within myself that is equal or parallel to the place the Christian God occupies in any orthodox Christian * * * My god of sensitivity connects me with the universe and expresses a meaning for it as amply as does the God of Christianity, if not more, for I become the universe. My god of life is knowable and unquestionable; I do not need to debate, via theological and metaphysical treatises, his existence, because I feel him hard in me, and in the things he connects me to."

At the trial Confield testified that he regards himself as a god within himself and that he feels at one with a flower or a person.[3] He compares such emotions with the "religious emotion" of the Shakers or that produced by the "wine and crackers" of Holy Communion and contends there is no difference. When the Court asked at the hearing whether he was a pantheist, Confield replied by

1. This was based on Confield's statement in his application: "I would do everything within my power to keep and protect, yes, even kill, the kind of existence I am destined to lead and all the things in this wild and beautiful world I love. For this reason only would I use violent force."

2. These included the Brigade Chaplain; a Jewish Rabbi (Auxiliary Jewish Chaplain); the Assistant Adjutant General; the Lieutenant Colonel commanding the battalion; the Brigade Commander; the Adjutant General by order of the Secretary of War and, finally, the Review Board.

3. His application states: "I once took a wild, red rose, which has only six petals, and I became through sensitivity a seventh petal, bringing myself into the rose I loved. I have seen my reflection in the rainsoaked bark of a tree. A while ago I found myself inside the soap bubbles I was blowing. Each time a bubble broke I trembled. In all the above ways, and many times more, I have communed with the god of my life. It is so. Otherwise, what is this power within me, if not a god?"

describing himself as an anthropomorphist.

He says he has kept these beliefs to himself but that he is now forced to confess them since service in the Army is a threat to his personal beliefs. I asked Private Confield whether he had ever written anything in school or college consistent with what he is now claiming. Subsequently, he furnished the Court with several of his poems. They are imaginative, sensitive, fresh in content and self-revealing.[4]

The Selective Service Act of 1967 provides (50 U.S.C. App. § 456) that no person is required to be subject to combatant training in the armed services who, "by reason of religious training and belief is conscientiously opposed to participation in war in any form." Construing the statute in the form in which it then existed, the Supreme Court has said in United States v. Seeger, 380 U.S. 163, at 176, 85 S.Ct. 850, at 859:

> "Within that phrase would come all sincere religious beliefs which are based upon a power or being, or upon a faith, to which all else is subordinate or upon which all else is ultimately dependent. The test might be stated in these words: A sincere and meaningful belief which occupies in the life of its possessor a place parallel to that filled by the God of those admittedly qualifying for the exemption comes within the statutory definition."

In United States v. Shacter, D.C., 293 F.Supp. 1057 a District Judge had before him a case somewhat similar to the present except that it involved an indictment for failure to report for induction. Defendant had been brought up in the Jewish faith. He believed that man's life is sacred and claimed the mortality of the human soul was central to his belief. While Shacter was an atheist he said that his feelings were religious and that he was not less religious than a man who believed in God. Judge Harvey concluded that the defendant's claimed beliefs occupy the same place in his life as an orthodox belief in God holds in the life of one clearly qualified for exemption.

The defendant in United States v. Haffner, D.C., 301 F.Supp. 828 did not believe in an anthropomorphic god but thought that "god is within man" and that "When a man dies his god also dies, therefore to kill a man is to kill a god." Haffner was not a member of any religious sect and did not claim such source for his beliefs. Judge Pence dismissed the indictment, pointing out that "the humanism of this defendant no less entitles him to conscientious objector status than the humanism of Seeger, Jakobson or Shacter, or the pantheism of St. Clair."[5]

I believe Confield to be sincere in his beliefs. As in United States v. Foran, D.C., 305 F.Supp. 1322, 1326, his testimony "reflected an honest and unprepared mind, not rehearsed or memorized language of court decisions." In that case the Court found that while Foran no longer believed in God, his strong moral aversion to violence was in part based on the early religious training he received in Catholicism. See,

---

4. I am mindful that the Army has consistently maintained in the cases before me that "the scope of judicial review of decisions by administrative agencies is limited to the record considered by the administrative agency unless there is a statute which provides for the taking of additional evidence or unless the proceeding is a trial *de novo* (Consollo [Consolo] v. Federal Maritime Commission. 383 U.S. 607, n. 17 at 618, [86 S.Ct. 1018, 16 L.Ed.2d 131] (1966)); 2 Am.Jur.2d Administrative Law § 697 (1962)."

While not conceding the point, I have restricted myself to the Army record except for impressions of sincerity gained at the trial.

5. As the Judge pointed out in a footnote, Jakobson believed in "goodness" which was the "Ultimate Cause for the fact of the Being of the Universe," (United States v. Jakobson, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733) while St. Clair believed that everything was god. United States v. St. Clair, D.C., 293 F.Supp. 337.

similarly, Fleming v. United States, 10 Cir., 344 F.2d 912, 916. The disqualification from exemption by reason of a "merely personal code" must be the sole basis of the objector's beliefs. Seeger, supra; United States ex rel. Brooks v. Clifford, 4 Cir., 409 F.2d 700, 708. Pantheism should not be considered such a code or merely a philosophical view. United States v. St. Clair, supra; United States v. White, 5 Cir., 421 F.2d 487.

Confield who claims no religious origin for his beliefs argues that the statutory exception as to conscientious objectors is discriminatory as to him and those so situated in that a person whose parents are not religious or are not members of religious sects qualifying for objection to military service is penalized for his religious inheritance irrespective of his actions or beliefs. The words "religious training and belief" in the statute are not to be given a narrow construction, for, otherwise, the First Amendment argument of unconstitutionality in preferring some religions over other mights have threatened the validity of the legislation. United States v. Shacter, supra, 293 F.Supp. 1060; Seeger, supra, 380 U.S. 188, 85 S.Ct. 850.

The Government argues that there is a basis in fact for the decision denying the C.O. classification in that Confield made no such claim before his Draft Board nor until he had been in the Army six months, knowing all along that he would eventually be sent to Vietnam. Petitioner claims that he did not learn until after his induction that his religious beliefs were the "all-important factors in my life." The concatenation of impending overseas combat service and religious revelation has led me to deny the writ in certain cases. United States ex rel. Scott v. Tillson (United States ex rel. Jordan v. Tillson), D.C., 304 F.Supp. 406 (1969).[5]

■ I think Private Confield is sincere in his beliefs and that his views about war and killing are a code or creed which to him is at least partly religious in nature. Obviously, his conscientious convictions arose after his induction. But it is no ground to deny him a discharge merely because he had completed his basic training. United States v. Clifford, 4 Cir., 409 F.2d 700. It has been held that the mere fact that the prospect of combat service acted as a catalyst in requesting C.O. status is not alone sufficient to uphold a denial. Tobias v. Laird, 4 Cir., 413 F.2d 936; Ross v. McLaughlin, supra.

■■ The claim of an inductee that his belief is an essential part of his religious faith must be given great weight. United States v. White, supra. Mere speculation or conjecture as to insincerity is not enough. Ross v. McLaughlin, supra; Witmer v. United States, 348 U. S. 375, 381, 75 S.Ct. 392, 99 L.Ed. 428. See also Owens v. Commanding General, Fort Ord, D.C., 307 F.Supp. 285. Nor is disbelief sufficient. Once a claimant satisfies the burden of establishing a prima facie case for exemption, affirmative proof by the Government is required to refute the claim. United States v. White, supra; Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132; Paszel v. Laird, D.C., 308 F.Supp. 741.

■ I find nothing in the record to show insincerity or to indicate that Petitioner's beliefs are not what he professes. He is being illegally restrained of his liberty and, accordingly, the petition for habeas corpus is granted and it is ordered and decreed that Stuart A. Confield be released from the custody of respondents.

5. Cf. Ross v. McLaughlin, D.C., 308 F.Supp. 1019.