In the Matter of Lieutenant (j.g.) Ronald L. McMAHAN, U S N R, 749465/1105, Petitioner,

v.

Hon. Melvin LAIRD, Secretary of Defense, Hon. John Chafee, Secretary of the Navy, Vice Admiral D. H. Guinn, Chief of Naval Personnel, Captain John R. Dewenter, U. S. N., Commanding Officer U.S.S. Cleveland (LPD-7), Respondents.

No. 70-357.

United States District Court, S. D. California.

Dec. 4, 1970.

Charles R. Khoury, Jr., San Diego, Cal., for petitioner.

Harry D. Steward, U. S. Atty., Frederick B. Holoboff, Asst. U. S. Atty., San Diego, Cal., for respondents.

## MEMORANDUM OPINION

GORDON THOMPSON, Jr., District Judge.

This case comes before the Court on a return to an order to show cause which was issued upon a petition for writ of habeas corpus. Petitioner requests to be discharged from the U. S. Navy as a conscientious objector. Petitioner, Ronald L. McMahan joined the Naval R.O.T.C. unit at the University of Colorado in September 1966, and remained therein until June 1969, when he graduated and was commissioned an Ensign in the U. S. Naval Reserve. Petitioner thereafter reported aboard the U.S.S. Cleveland (LPD-7) on August 1, 1969, and was attached to that command until approximately November 8, 1970.

On September 28, 1970, petitioner made application for discharge by reason of conscientious objection to Naval Service pursuant to DOD 1300.6 and BUPERSNOTE 1900 dated August 21, 1970, which provides in part:

Claims based on conscientious objection growing out of experiences prior to entering military service but which did not become fixed until entry into the service will be considered.

Section 2 of BUPERSNOTE 1900 clearly states:

[I]n recent interpretation of Section 6(j) of the Military Selective Service Act of 1967 the Supreme Court ruled that the law "exempts from military service all those whose consciences, spurred by deeply held moral, ethical, or religious beliefs, would give them no rest or peace if they allowed themselves to become a part of an instrument of war." The Court further ruled that conscientious objector classification cannot be claimed by those "whose beliefs are not deeply held and those whose objection to war does not rest at all upon moral, ethical, or religious principle but instead solely upon considerations of policy, pragmatism, or expedience." The objection must be to all wars at all times and not to a particular war.

The Court finds that petitioner herein complied with the necessary procedures as set forth by the military with respect to bringing his application before the Chief of Naval Personnel. This application was denied on October 23, 1970, on the grounds that, "when viewed with

your entire service record, [it] lacks credibility." The Chief of Naval Personnel stated that he did not believe that petitioner was "moved by the deep, life-controlling beliefs of the true conscientious objector."

█ It is understood by this Court that claims of conscientious objection are to be viewed by the same standards whether made before or after entering military service (DOD 1300.6, Paragraph IV B3b); that the scope of judicial review is limited to determining whether there was "a basis in fact" for the final determination of the Chief of Naval Personnel. Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L. Ed. 567 (1945). Thus, this Court is required to determine if there was a basis in fact for the Navy's denial of petitioner's request for discharge, and in so doing, is required to examine the entire record before it in order to make an "[e]valuation of the sincerity of a claim of conscientious objection [which] requires objective consideration of professed belief not generally shared by persons in the military Service." DOD 1300.6, Paragraph V C.

BUPERSNOTE 1900 is directed to crystallization of beliefs developed in the service. Therefore, we must consider not only what petitioner believed, but more important, when his beliefs crystallized.

The Supreme Court in Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970), arrived at the conclusion that Paragraph 6(j) of Section 456 of the Selective Service Act of 1967 (50 U.S.C.A. App. § 451 et seq.) "exempts from military service all those whose consciences, spurred by deeply held moral, ethical, or religious beliefs, would give them no rest or peace if they allowed themselves to become a part of an instrument of war." 398 U.S. at 344, 90 S.Ct. at 1798.

One must oppose participation in war in any form. United States v. James, 417 F.2d 826 (4th Cir.1969).

Requests for discharge will not be accepted when based on objection to a particular war. (BUPERSNOTE 1900, Paragraph 1)

The Chief of Naval Personnel, in denying the request of petitioner on the grounds of lack of credibility and the failure to be moved by deep life-controlling beliefs of a true conscientious objector, based his decision on the following factors.

1. In June 1969, petitioner accepted a commission in the United States Naval Reserve and took the oath of office "freely and without any mental reservation or purpose of evasion."

2. That at that time petitioner listed "small combatant" as his first choice of assignment and requested duty in "Operations/Weapons".

3. In June 1970, petitioner accepted a promotion to Lieutenant (j.g.), reaffirming his oath of office.

4. In September 1970, petitioner took issue, in writing, with United States policy in Indochina.

In support of the position taken by the Chief of Naval Personnel, the Government argues that BUPERSNOTE 1900 and DOD 1300.6 both provide that the head of the applicant's military department shall be the final authority; that this Court's review is limited to whether there was "a basis in fact" for that final determination; that the Court may examine the record before it to ascertain whether it discloses *objective facts inconsistent with the claimed sincerity of belief;* that the Court is not empowered to weigh the evidence or to hear the matter de novo.

The Government relies on Exhibit "C" attached to the application of petitioner, a letter from a group known as "Concerned Officers," to the Department of Defense, arguing that it is clear therefrom that petitioner objects to this country's present policies in Indochina and specifically to the war in Viet Nam. A reading of the Government's response indicates that the basis in fact relied upon is that the record discloses objec-

tive facts inconsistent with the claimed sincerity of belief of the petitioner, to wit, that his beliefs are based upon policy, pragmatism, expedience and that his objection is not to all war, but to a particular war, i.e. the Viet Nam war.

■ Based upon a comprehensive review of the record, this Court cannot agree with the position taken by the Government and by the Chief of Naval Personnel, and concludes that there is no basis in fact from the record for the conclusion that petitioner's application lacks credibility or that he is moved otherwise than by deep life-controlling beliefs of a true conscientious objector.

The record indicates that pursuant to his application for discharge (Exhibit "B") petitioner filed therewith a statement entitled "Nature of my Belief" (Enclosure 1). Therein petitioner sets forth in great detail his understanding of God and his relationship to the universe. Since the Government has made no issue of those beliefs, they need no elaboration here; suffice it to say that no reason appears to question the sincerity of those beliefs.

However, several portions of that statement bear directly on the issue tendered by the Government, to wit, that petitioner's objection is not to all war, but to a particular war. Petitioner states:

For me to destroy or to purposely kill would be to contradict God and his universal order. To me, killing another person would be the same as working toward the destruction of God and, on another level, myself.

My actual participation in killing of human beings becomes more real to me each day that I am in the military. I find myself developing deep feelings of guilt for committing this sin.

For me, there is nothing that can justify war.

\* \* \* \* \* \*

Just through my presence in the Navy, I am supporting and contributing to war.

Petitioner states that he was assigned to implement certain nuclear weapons authentication systems aboard ship, the purpose of which was to authenticate messages ordering the use of nuclear weapons. It was this implementation which caused him to make his application for discharge, for it was at that time that he determined that he was "morally incapable of participating in this organization which can and does ask me to kill."

Petitioner's convictions are that because killing is not justified, war is not justified; to continue in the military service he is continuing in a war program which in his belief violates the dictates of his conscience, so much so that he cannot direct his controlled thinking contrary to his conscientious beliefs to the benefit of any military organization which requests of him otherwise.

Attached to petitioner's application for discharge are several additional documents, all of which support the sincerity of petitioner's beliefs. Looking into the record, Exhibit "H" is a statement from Captain J. L. Merrick, Commanding Officer of the U.S.S. Cleveland, stating that petitioner served under his command from November 1969 until August 1970. In late August of 1970, and again in late September of 1970, petitioner had lengthy discussions with Captain Merrick relative to his beliefs which his conscience then dominated. Captain Merrick's statement closes with this phrase: "I believe that LTJG McMAHAN is sincere in his beliefs and that under the circumstances, he should no longer be retained in the Naval Service."

Exhibit "A" is a letter from the the present Commanding Officer of the U.S.S. Cleveland, Captain John R. Dewenter, to the Chief of Naval Personnel requesting the discharge of petitioner by reason of conscientious objection to Naval Service. This letter states in part that petitioner served on the U.S.S. Cleveland for a period of 14 months and established an enviable reputation for

ability and industry. Of his service on board, 7 months were spent in West Pac (including Viet Nam) and that for the past several months he was Assistant Communications Officer holding a top secret clearance. Captain Dewenter therein further states:

3. That he held views generally along the lines of the thoughts in Enclosure (1) has long been known. These crystallized into a basis for redirection of his life when he had to begin serious preparation for handling nuclear weapon control sealed Authenticator Systems. The statements of the Enclosure (1) as to the development of his decision appear well bourne out by his observed actions.

Captain Dewenter indicates that there is no apparent question of petitioner's loyalty to the United States and recommended his change of duty effective as soon as possible.

Exhibit "I" is a letter from J. C. Elder, Commander, U.S.N., Executive Officer, U.S.S. Cleveland, wherein it is stated that petitioner's performance of his duties has been consistently excellent; that whatever else may motivate petitioner in his present request, it is not a reluctance at the prospect of hard work or long hours; that petitioner appears very strongly inner-directed in his beliefs and that he has been entirely forthright with his command in the matter of his developing view. Commander Elder closes his résumé as follows:

I am convinced that Mr. McMahan is entirely sincere in the convictions set forth in his application, and that he should be permitted to terminate his naval service.

Exhibit "K" is a letter dated October 6, 1970, from Lieutenant (j.g.) Robert F. Anderson, U.S.N.R., to Commanding Officer, U.S.S. Cleveland (LPD-7), who speaks of petitioner and his views in this manner:

During the past four months, which included a short cruise to the Western Pacific and Viet Nam [2nd Viet Nam cruise], his opinions and beliefs seem

to have coalesced and culminated in his application as a conscientious objector.

Regarding the sincerity of the beliefs that are the basis of Mr. McMahan's application, I will state that I have never heard him say anything or perform any actions that could be considered inconsistent.

In Exhibit "M", Lieutenant John F. Baldwin, Chaplain, U.S.N.R., refers to petitioner's views as follows:

I remember having asked him if he was or had been a hunter. The answer was negative; he had not been nor ever intended in the future. He abhorred any contact with guns and had no intention of ever being involved in any sport that would kill. I proposed the further question of self-defense and attack. His answer was that one should avoid the occasion and when the occasion was unavoidable to flee that confrontation rather than destroy.

* * * I have no doubt concerning Lt. (j.g.) McMahan's expressed convictions and his ability to act according to the demands required to support them.

* * * * * *

There is no reason for suspicioning that Lt. (j.g.) McMahan is anything except sincere. His affiliation with "Concerned Officers" has perhaps solidified his personal moral convictions and outlined proper procedures, but in no way formed those already existing notions of life, nature, growth and dignity which in his thought and life-style are contradicted by war, violent wounding and death.

Exhibit "N", the record of the consulting physician as required by the administrative procedure, reflects the following impression: "No contraindication on psychiatric grounds for processing as C.O."

█ Clearly, petitioner has more than satisfied his burden of making out a prima facie case for exemption, and affirmative proof is required to refute

this claim; mere disbelief is not sufficient. United States v. White, 421 F.2d 487, 492 (5th Cir.1969); Dickinson v. United States, 346 U.S. 389, 397, 74 S.Ct. 152, 98 L.Ed. 132 (1953).

"It is firmly settled * * * that the appropriate authorities, be they the local draft boards, appeal boards or [Navy] officials, are not vested with unbridled and unfettered discretion in assessing and evaluating the evidence submitted in support of conscientious objector claims." Packard v. Rollins, 422 F.2d 525 (8th Cir.1970).

In the face of the imposing record which has been amassed by the evidence in this case, and which this Court has reviewed, the Government has shown nothing contrary thereto, either as to the lack of credibility or as to the failure of petitioner to be moved by other than deep life-controlling beliefs of the true conscientious objector. It is important to note that every person in the chain of command, as well as friends and relatives of the petitioner, verified his sincerity without exception; there is no evidence to the contrary.

■ In denying petitioner's application, the Chief of Naval Personnel and the Government point to the fact that petitioner accepted a commission in the U. S. Naval Reserve, took the oath of office "freely and without any mental reservation or purpose of evasion," listed small combatant as his first choice of assignment, requested Operations/Weapons, accepted a promotion to Lieutenant (j.g.) in June 1970, reaffirming his oath, and in September took issue in writing with the United States policy in Indochina. (Letter from Bureau of Naval Personnel dated October 23, 1970.) However, the regulation with which we are here involved is designed for this situation; that is, a change of viewpoint after active duty commences. To deny discharge solely on grounds that certain factors which were considered occurred prior to the change of belief would be to frustrate the purpose of the regulation and deprive it of any field of operation

for numerous persons training and receiving officer's commissions. Application of Tavlos, 429 F.2d 859, 863 (5th Cir. 1970).

■ While it is true that factors occurring prior to an in-service conversion may be considered on the issue of sincerity, these factors are of little consequence, particularly when viewed in light of the overwhelming evidence of sincerity submitted by petitioner in this case. Certainly it is more appropriate, therefore, to consider facts which arose subsequent to petitioner's conversion, and not those factors that preceded his change of belief.

The very basis for petitioner's application was that his views had crystallized after entry into the military. It is this type of situation for which the Department of Defense developed DOD 1300.6 and BUPERSNOTE 1900. Both of these directives were designed to protect those who, after enlistment, find war morally repugnant and impossible to square with their deeply held moral, ethical or religious beliefs.

Acknowledgment of this crystallization is set forth by the Commanding Officer of the U.S.S. Cleveland in Exhibit "A" wherein he states: "That he [petitioner] held views generally along the lines of the thoughts in enclosure (1) has long been known. These crystallized into a basis. for redirection of his life when he had to begin serious preparation for handling nuclear weapon control Sealed Authenticated Systems." This certainly lends credence to petitioner's own statement of how his views solidified into his recently formed opposition to military service.

The Government relies on a statement in the petitioner's application which is attached as Exhibit "C", a letter from a group known as "Concerned Officers" to the Department of Defense which petitioner referred to in Paragraph (r) of his application. Petitioner therein states, "I have never given public expression to the views that are the basis of my claim through public speech. I

did, however, along with a large group of Naval officers, attach my signature to an open letter which stated our collective views on certain subjects." The letter referred to is in fact a statement by certain commissioned officers expressing concern of the country's present policies in Indochina, but relates specifically to war as it pertains to the people of that country.

Because petitioner affixed his signature to such a document along with other Naval officers, the Government accordingly surmises that it is clear that the petitioner objects not only to the Government's policy in Indochina, but specifically to the war in Viet Nam and that, therefore, his application for discharge is based either upon policy, pragmatism, expedience or his objections to a particular war.

Disapproval of war in Viet Nam or any other place is certainly consistent, rather than inconsistent, with conscientious objection to armed conflict. If petitioner had said that he was a conscientious objector but nevertheless approved of a particular war, this would have been such an inconsistency as to have undermined the sincerity of his objection to war upon moral, ethical or religious principles. This expression from the petitioner "cannot, and by this Court will not, be transformed into such an objectively inconsistent act that it would override the great mass of evidence to the contrary." Kessler v. United States, 406 F.2d 151, 155 (5th Cir.1969).

It is evident from the record that the Chief of Naval Personnel did not choose to adhere to the views and recommendations of the officers below him in the chain of command, all of whom verified the sincerity of the petitioner and recommended discharge. These officers were men of sufficient Naval background, education, experience and integrity to rise to the ranks that they now hold and, in some cases, to the command of a United States Naval vessel. They were men in whom the Navy had heretofore displayed unqualified trust and con-

fidence. But, of even more import is the fact that these Naval officers, whose recommendations were made relative to petitioner, did so after a face-to-face confrontation at length with petitioner, and by reason thereof were in a much better position to pass judgment upon petitioner's sincerity and credibility.

For the reasons heretofore set forth, it is the opinion of this Court that the decision of the Chief of Naval Personnel denying petitioner's request for discharge as a conscientious objector is without basis in fact. Accordingly, it is hereby ordered that the petition of RONALD L. McMAHAN for writ of habeas corpus is granted, and that being illegally restrained of his liberty, he be discharged from the custody of Respondent forthwith.