**UNITED STATES ex rel. James S. JOHN-SON, Pvt. E-2, United States Army, SSAN: 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, Petitioner,**

v.

**Stanley R. RESOR, Secretary of the Army, and Commanding General, Fort Gordon, Georgia, Respondents.**

Civ. A. No. 1652.

United States District Court,
S. D. Georgia,
Augusta Division.

Oct. 6, 1971.
Final Order Oct. 8, 1971.

Peter E. Rindskopf, Atlanta, for petitioner.

R. Jackson B. Smith, U. S. Atty., Edmund A. Booth, Jr., Asst. U. S. Atty., Augusta, Ga., for respondents.

## ORDER

LAWRENCE, Chief Judge.

Petitioner seeks discharge from the Army claiming that he was unlawfully inducted on September 28, 1970 and that he is being illegally held in custody by the Respondents. Private Johnson claims that he was denied procedural due process and that there was a violation of Army Regulations in that (a) he should have been classified I–S(C) [1] by the Local Board instead of I–A; (b) that he was not given thirty days to complete his SSS Form 150 (conscientious objection) before being notified to report for induction; (c) that the Board furnished him an obsolete and inapposite pre-*Welsh* [2] form which was concerned only with exemption from military service by reason of "religious training and belief" and (d) that the Army Conscientious Review Board should not have denied his post-induction application for discharge.

A hearing was held at Savannah on July 8, 1971. The case was submitted to this Court on the records and on briefs.

While chronologically improper, I will consider first the matter of the Review Board's denial of Petitioner's claim for discharge on the ground of conscientious objection to war in any form.

1. That is, the graduate study deferment.

2. Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 holding that the statutory exemption applied to all whose "consciences, spurred by deeply held moral, ethical, or religious beliefs, would give them no rest or peace if they allowed themselves to become a part of an instrument of war." *ibid.*, 344, 90 S.Ct. 1798.

## I

## DENIAL OF DISCHARGE BY THE ARMY

At the time of his induction Petitioner was a graduate student in anthropology at the University of Kansas. He commenced his studies there in August, 1970. A few weeks later he was ordered to report for induction and was inducted on September 28, 1970. Prior to enrollment in the graduate school Johnson graduated from the University of New Mexico as a pre-law major. He had applied for admission to the law school in April 1970. Petitioner was an excellent student. According to a letter in the file from a professor in the Anthropology Department, he is "an extremely intelligent, level-headed, and dedicated young man and we can foresee a truly productive career for him in teaching and research production in anthropology."

Approximately four weeks after induction Private Johnson filed a request with the Army for discharge as a Conscientious Objector. His "Statement" characterized war as a "stupidly wasteful, as well as cruel, way of attempting to settle human difference." "I can not and will not take a human life under any circumstances," he said. He further stated, "I will never kill, injure or maim; nor will I order someone else to do this; nor will I train others to kill and die." Johnson described himself to the interviewing chaplain as a "scientific moralist." [3] He claims to be a "citizen of humanity."

Petitioner says he was shocked during basic training to find so many advocates of violence. "The word kill is everywhere." He was appalled with the M-16 rifle—"the most evil man-made device I have ever directly come into contact with." [4]

Following the filing of the request for discharge, Johnson was interviewed by a J.A.G. hearing officer who found him "truly opposed to the participation in any organization which advocates or uses violence." Captain Brody reported that participation in war would corrupt his beliefs and ideals and discharge was recommended. The Assistant Brigade Chaplain concluded that Johnson was opposed to military service in any form and that he was sincere in his beliefs. The commanding officer of his Company had several consultations with the inductee and became convinced of his sincerity. In fact, every officer in the chain of command at Fort Polk who interviewed Private Johnson found him sincere and recommended discharge from the Army.

On March 15, 1971 the Conscientious Objector Review Board found that Johnson's desire to continue his anthropological studies was the basic and real reason behind his request for discharge and that he did not possess deeply held beliefs against participation in war in any form. The Board emphasized his statement that "I am not trying to avoid my military obligation, I only want to contribute my anthropological talent in an area pertinent to peaceful human harmony. I wish to be allowed to return to school to achieve my Ph.D. in African studies, then return to complete my active duty in Africa." Petitioner who asked for a Military Occupation Speciality to one of the African areas but "only in interest of peaceful co-existence" thinks that the "myth" must be stripped away before "the reality of Africa emerge." He believes that qualified specialists are needed if we are to obtain "a knowledgeable understanding of African situations." None of this is inconsistent with his claim of conscientious objection and it is merely tangential to his views concerning war.

█ █ The Army Review Board had no basis in fact for deciding that Private Johnson is primarily motivated by

---

3. He told the Brigade Chaplain that he is writing a book about inter-human co-operation.

4. This did not prevent him from receiving a Sharpshooter Badge, M-16.

the desire to continue his study of anthropology. His post-induction request for discharge clearly made out a *prima facie* case of conscientious objection and shifted the burden to the Army to prove otherwise. In such cases affirmative refutatory proof is required to defeat the claim. United States v. White, 5 Cir., 421 F.2d 487, 492; McMahan v. Laird, D.C., 320 F.Supp. 485, 409f; Confield v. Tillson, D.C., 312 F.Supp. 831; Hackett v. Laird, D.C., 326 F.Supp. 1075; United States v. Stetter, 5 Cir., 445 F.2d 472. There must be something in the record to support a rejection, substantially blurring the picture painted by the applicant. Kessler v. United States, 5 Cir., 406 F.2d 151; Helwick v. Laird, 5 Cir., 438 F.2d 959; Weber v. Inacker, D.C., 317 F.Supp. 651. Disbelief, surmise or speculation are not enough. Helwick v. Laird, *supra*; United States ex rel. Armstrong v. Wheeler, D.C., 321 F.Supp. 471; United States v. White, *supra*; United States v. Stetter, *supra*.

I do not think that trying to read a soldier's mind as to his primary motivation for seeking discharge from the Army overcomes the case made out by Private Johnson for discharge. However, in view of the conflicting contentions of the parties concerning the legal effect of the pre-induction denial of C.O. status to Johnson by Selective Service Board No. 50, Kansas City, its file relating to James Solomon Johnson is highly relevant.

## II

### DENIAL BY LOCAL BOARD OF CONSCIENTIOUS OBJECTOR CLASSIFICATION

The records of Board No. 50 reflect that from 1965 to August, 1970, the registrant never said a word about being opposed to war. He received a II–S deferment each year for four years while a student at the University of New Mexico. On April 21, 1970, he was re-classified as I–S(C) until June of that year. At the expiration of that period and following his graduation he was classified I–A. He appealed the ruling and it was affirmed by the Appeal Board. On September 8, 1970, the Local Board ordered Mr. Johnson to report to the Examining and Entrance Station on September 28th. Meanwhile, on August 14th the Local Board at Petitioner's request furnished him Conscientious Objector Form SSS 150. It limits itself to requests based on opposition to war because of "religious training and belief." He returned it on September 15th, signed but not filled out. Accompanying it was a brief letter in which Johnson said that "war is a moral wrong" and that he wished to be classified as a conscientious objector. He requested a "hearing." He added that "under the new ruling the present form * * * does not directly apply." Clearly, he had reference to Welsh v. United States, *supra*.

The order to report for induction was mailed on September 8, 1970. On September 16th the Local Board requested State Headquarters to postpone induction for the purpose of an interview with Johnson. This request was declined on the ground that "no substantial evidence whatsoever" had been furnished "regarding his lately submitted allegation of conscientious objection."[5]

Johnson was inducted on September 28, 1970. He received his basic combat training, obtaining excellent ratings in conduct and efficiency. He was transferred to Fort Gordon in March, 1971. Private Johnson is presently attending the Military Police Advanced Individual Training.

---

5. "Requests for discharge after entry into military service will not be favorably considered when * * * (2) based solely on the conscientious objection claimed and denied by the Selective Service System prior to induction." Counsel for Respondent argues that the Review Board was justified in believing that Johnson had received full and plenary consideration by the Selective Service System and that the Army, "burden ridden" as it is, should not have to review this post-induction claim.

Petitioner contends that his induction was unlawful; that he was erroneously denied Conscientious Objector status by the Local Board, and that his detention is illegal because:

1. The Special Form for Conscientious Objector instructed the registrant to "complete and return within 30 days" and it therefore became a part of the Regulations by virtue of 32 C.F.R. § 1606.51(a) which is entitled "Forms made part of Regulations." Petitioner was ordered to report for induction prior to the expiration of the thirty days in which he was supposed to return Form 150. He claims that he was not accorded due process in being denied the full period of time before ordered to do so.

2. That he was improperly ordered to report and is entitled to discharge because he was notified before the expiration of the "academic year" which runs from the beginning of one school year until the beginning of the next. This contention relates to the I–S(C) classification granted in April, 1970.

3. That he was misled by the local Draft Board when it furnished him an obsolete pre-Welsh form of application for I–O status which was limited to religious grounds and thereby denied him the proper exercise of his right to that classification.

4. That the letter accompanying Form 150 saying "I feel war is a moral wrong" established a *prima facie* claim to the conscientious objector status and entitled registrant to a hearing thereon and the right to appeal before induction.

## 1—CLAIM OF LACK OF PRE-INDUCTION DUE PROCESS IN THE MAILING OF THE NOTICE TO REPORT BEFORE THE ELAPSE OF THIRTY DAYS IN WHICH TO SEND IN FORM 150

■ Petitioner contends that due process was not afforded in that the Local Board failed to give him the full thirty days to fill out and return the C.O. claim. The notice to report for induction was sent shortly before the expiration of that period. At the time the notice was mailed by the Local Board the registrant had signed and filed it. I do not think that a mere request for Form 150 extended the time within which to mail the notice to report for induction. There is no showing that Johnson was prejudiced. He claims that the failure to give him the full thirty days to return Form 150 deprived him of his right to the benefit of a personal appearance before the Board, factual consideration of the claim and to an appeal if his application was denied by the Local Board. See Magaro v. Cassidy, 5 Cir., 426 F.2d 137. Prejudice may result from the premature issuance of an induction order because of the severe limitations upon reopening a classification and presenting new evidence. See 32 C.F.R. § 1125.2; United States v. Zablen, 9 Cir., 436 F.2d 1075. However, I hold that the order to report for induction was not premature. The failure to consider the merits of the Registrant's claim to the I–O classification was of his own doing.

## 2—EFFECT OF GRADUATE STUDENT DEFERMENT

■ Under the statute and regulations the "academic year" runs from the beginning of one school year to another. 50 U.S.C.A. App. § 456(h) (1) (2); 32 C.F.R. § 1622.25(b); United States v. Rundle, 8 Cir., 413 F.2d 329; Waguespack v. Tarr, D.C., 317 F.Supp. 448, 450. But this does not help Private Johnson. His II–S deferment ran out shortly before he graduated at the University of New Mexico. The Local Board granted him an I–S(C) deferment to June 2, 1970 in order that he could complete his undergraduate requirements. Petitioner argues that the I–S(C) classification lasted twelve months, that is, past September, 1970, and that he could not be reclassified I–A until the expiration of the "academic year." He completed his undergraduate education in June, 1970 and was not entitled to the graduate deferment which the Board gave him. The I–S(C) is grantable only in the case

of study of the Healing Arts. It does not extend to the study of law. There is no merit to the contention that I–S(C) classification prevented the Local Board from ordering him to report for induction on September 28, 1970.

### 3—USE OF PRE-WELSH FORM

█ I do not think that Petitioner was really misled by SSS Form 150 even though it did not indicate that deeply held moral objection to war might entitle a registrant to I–O classification as well as religious beliefs. In United States v. Buckles, No. 70577 (N.D.Cal. March 5, 1971) 3 SSLR 3883 a registrant was acquitted by a district court on the ground that the obsolete form prejudiced his rights to seek timely I–O status. In the instant case Johnson was aware that a religious or theistic basis for such a deferment was no longer required. Notwithstanding, he furnished no evidence to support his claim of moral aversion to war. A registrant can claim Conscientious Objector status without doing so on the prescribed form. United States v. Fraser, 9 Cir., 314 F. Supp. 1262.

On September 14, 1970, Mr. Johnson was advised by the Local Board that "Until there is information in your file regarding your C.O. claim or other status, it would serve little purpose for the Board to forward your file to the State Director." The letter added, "Therefore we would suggest that you submit any such information in writing promptly." On September 18th someone from Kansas University called the Board on behalf of the Registrant in order to obtain information. The inquirer was informed that "Mr. Johnson had practically nothing in writing to support his claim and that he should get something *in writing* immediately." On September 21st the Board informed Petitioner that the State Headquarters had refused postponement of induction because the file contained "no substantial evidence whatever" as to conscientious objection.

Despite this, Johnson failed to furnish any more information. Why not, is a mystery to me.[6]

Under the circumstances, I find no lack of due process in supplying Petitioner with Form 150.

### 4—NO PRIMA FACIE CASE FOR EXEMPTION ESTABLISHED BEFORE LOCAL BOARD

█ The handwritten note Petitioner sent in with Form 150 failed to establish a *prima facie* case for the Conscientious Objector classification. United States v. Enslow, 9 Cir., 426 F.2d 544; United States v. McDonald, D.C., 301 F.Supp. 79; Austin v. United States, 5 Cir., 434 F.2d 1301. In United States v. Chacon, 5 Cir., 436 F.2d 411 the Court of Appeals for this Circuit ruled that a local board is not required to reopen a registrant's classification as a conscientious objector where he merely wrote a vague letter requesting a ministerial exemption. It is under no duty to ascertain *sua sponte* whether a registrant qualifies for conscientious objector status, the burden being on him to establish that classification. Austin v. United States, *supra*.

The Local Board was fully justified in its refusal to change its I–A classification to that of I–O.

6. On the day of his induction Johnson's father visited the Local Board office and inquired why his son had not been given a "hearing." After this was explained, he informed the Secretary of the Board that his son wanted non-combat duty only and "otherwise had no objection to going into the service." On the same day the Board wrote a letter to the Commanding Officer at the Induction Station informing him that if Mr. Johnson filed for a I–A–O classification (non-combatant military duties) the Board would give consideration to such claim at the first opportunity. On October 9, 1970, Petitioner's father wrote to the Army asking that his son be permitted to continue his anthropological studies after completion of his basic training and requested that he be allowed to take Advanced Individual Training during the summer months.

## III

### DENIAL OF DISCHARGE BY ARMY

I conclude that Petitioner was legally inducted; that he was not deprived of pre-induction due process rights, and that he is not entitled to a discharge from the Army because of any illegal actions or omissions at the local board level.

But my holdings in that respect do not settle the question of the refusal by the Army Conscientious Objector Review Board to grant the request for discharge by Johnson after induction. Was the military correct in denying such claim in the light of AR 635–203(b) (2)? As noted, this portion of the Army Regulations states that post-induction discharges for conscientious objection will not be favored if such status was "claimed and denied by the Selective Service System prior to induction."[7]

■ It must be kept in mind that the Selective Service System never considered registrant's Conscientious Objector claim on its merits. I think that the Regulation contemplates cases where there has been careful, factual analysis by the local board on the merits of the case and not mere denials of such classification for technical reasons.

The Selective Service Regulations provide that the "classification of a registrant shall not be reopened after the local board has mailed to such registrant an Order to Report for Induction * * * unless the local board first specifically finds that there has been a change in the registrant's status resulting from circumstances over which the registrant had no control." 32 C.F.R. § 1652.2. In Ehlert v. United States, 402 U.S. 99, 91 S.Ct. 1319, 28 L.Ed.2d 625 the Supreme Court was confronted with

maturation of views about war between the time of the mailing of notice of induction and the scheduled induction and whether change of conscience is a circumstance over which a registrant has control. Unwilling to embark on this philosophical-theological sea, the highest Court found that the Army had a procedure for handling late crystallization claims. It upheld the policy of in-service determination in such cases. The Army had given assurance that inductees would not be assigned to combat training.[8] The Court described the complete lack of any remedy as "intolerable" and "wholly arbitrary." Of course, *Ehlert* is different from the present case since Johnson's opposition to war in any form ripened prior to induction.

In support of the contention that the jurisdiction of this Court is limited to review of the evidence that was before the local board at the time it denied Conscientious Objector classification the respondents cite McGee v. United States, 402 U.S. 479, 91 S.Ct. 1565, 29 L.Ed.2d 47. That case grew out of a registrant's willful failure to cooperate with the draft board. He had burned his draft card and had ignored its orders. At his criminal trial he raised the defense that the local board had erroneously denied him conscientious objector status. The Supreme Court said that he was barred from doing so since he had failed to exhaust his administrative remedies and that the bypass was "deliberate and without excuse." p. 488, 91 S. Ct. 1565.

In the present case Petitioner did not support his statement to the Local Board that war is immoral and that he was conscientiously opposed. He did ask for a "hearing" and within a month after induction filed with the Army a factual-

---

7. This Regulation relates to 50 App. U.S.C.A. 460(b) (3) which prohibits judicial review of classifications of registrants until after induction or refusal to report for induction.

8. A letter written by the General Counsel of the Army to the Department of Jus-

tice (referred to in *Ehlert*) said: "You also asked whether the Army allows a soldier to file for discharge in instances where his conscientious objector views fixed after notice of induction but prior to entry into the military service. Present practice grants the soldier the opportunity to file in such cases."

ly supported claim for discharge on the ground of being a conscientious objector.

■■■ Where a registrant completely bypasses a local board and fails to furnish *"any facts"* upon which to determine his conscientious objector claim he cannot raise the failure to grant such exemption as a defense in a prosecution for not reporting for induction. United States v. Enslow, *supra,* 426 F.2d 545. However, the exhaustion of remedy doctrine in Selective Service cases is not a draconian, procrustean affair. It does not absolutely bar judicial relief. McKart v. United States, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194; United States v. Davila, 5 Cir., 429 F.2d 481. The rule will be relaxed in special, exceptional and unusual circumstances. Thompson v. United States, 10 Cir., 380 F.2d 86; Edwards v. United States, 9 Cir., 395 F.2d 453; United States v. Burns, D.C., 296 F.Supp. 162; United States v. Crowley, 4 Cir., 405 F.2d 400; Ashton v. United States, 8 Cir., 404 F.2d 95.

Earlier I ruled that the challenged acts of Local Board No. 50 did not invalidate Petitioner's induction and were not a denial of due process. Nothing done was blatantly lawless. However, actions not in themselves unlawful may justify the flexing of the rule since "To be weighed against the interests in exhaustion is the harsh impact of the doctrine when it is invoked to bar any judicial review of a registrant's claims." *McGee, supra,* 402 U.S. 484, 91 S.Ct. 1569. The rule has been flexed where a registrant was not properly apprised of existing administrative remedies (Anderson v. Hershey, 6 Cir., 410 F.2d 492); where erroneous instructions, advice and information were furnished concerning administrative remedies (Powers v. Powers, 5 Cir., 400 F.2d

438), and where clear and explicit instructions were not received by the registrant from the local board. Striker v. Resor, D.C., 283 F.Supp. 923.[9]

Form 150 was misleading. Nothing in it applies to a registrant seeking exemption on moral or ethical as distinguished from religious beliefs. Given a form which comported with the holding in Welsh v. United States, *supra* (and United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733) it is possible, even though Johnson was aware of the holding in that case, that he would have filled it out and by doing so would have established a *prima facie* case for I–O status. See United States v. Burns, 10 Cir., 431 F.2d 1070, 1074; United States v. Buckles (N.C.Cal. March 5, 1971), *supra.*[10]

■■■ I confess to looking hard to find some way around the exhaustion of remedy obstacle when not to discover one is to deny any remedy to one who at the time of his induction was eligible for I–O status. Private Johnson has been held in the Army over a year despite the unanimous conclusion of all interviewing officers that he sincerely objects to war in any form. The statutes, regulations and decisional law dealing with classification, deferments and exemption is a tenebrous and serbonian fen in which nothing is clear and all is seen darkly. I find no statute or decision that tells me that this Court lacks jurisdiction in this case or that Private Johnson was not erroneously denied discharge by the Army as a Conscientious Objector. I rule that the exhaustion of administrative remedy rule did not preclude him from obtaining relief after his induction. It is ordered that Petitioner be discharged from the custody of Respondents subject, however, to the following comments.

9. I am aware of decisions in other Circuits holding that the conduct of the local board must be unconscionable; that the registrant must show that he relied on such information and that the exhaustion rule can be relaxed only in "very extreme cases." See United States v. Lowell, 9 Cir., 437 F.2d 906.

10. The form in question tracked 50 U.S. C.A. App. § 456(j) which speaks only in terms of "religious training and belief."

## IV

### DISPOSITION

Private Johnson informed the interviewing Chaplain that he recognized his responsibility to his country and was willing to serve in the Job Corps or the Peace Corps. He expressed a willingness to come under the Conscientious Objector Work Program of the Selective Service System. But what he really wants to do is to continue his studies in the anthropological field.

A professor at Kansas University says that Mr. Johnson is "the only Negro we have been able to attract to the graduate program." Another professor attested that "he is one of the *very few* of his race to be in anthropology at all, *anywhere*, and the *first* and *only* member of his race * * * to specialize in human origins. * * *" An official of the University of New Mexico, where Petitioner first became interested in that subject, says that "the proportion of Negro and other members of minority groups among anthropologists is distressingly low. * * * Mr. Johnson's desire to earn an advanced degree in anthropology and his obvious ability as demonstrated at UNM to attain that goal mark him as a potentially important member of the Negro Society as well as of the academic community." Apparently Petitioner is like Juvenal's black swan—"*rara avis in terris, nigroque simillima cygno.*"

If I required Petitioner to obtain a job in the national interest for the balance of his Army term, several weeks would elapse before such arrangements could be made. And I am not at all sure that it would be more to the national interest than his pursuit of the study of man as an animal, including the riddle of why *homo sapiens* acts like he does in the late twentieth century. I will not direct the immediate discharge of the Petitioner but shall await assurances that he will be enrolled this Fall as a graduate student in Anthropology. When satisfied in that respect, I will make this Order final.

### FINAL ORDER

Having been assured that Petitioner will be accepted in the Graduate School of Anthropology at the University of Kansas this Fall and that he will enroll upon his discharge from the Army, the Court Orders and Directs that Petitioner be immediately discharged from the custody of the Respondents.